WILHELM *v.* WILHELM

[No. 185, October Term, 1956.]

*Decided June 24, 1957.*

The cause was argued before BRUNE, C. J., and COLLINS and PRESCOTT, JJ., and HORNEY, J., Chief Judge, Second Judicial Circuit, specially assigned.

*Walter B. Siwinski* and *Cullen H. Hormes,* for appellant.

*A. Frederick Taylor,* with whom were *Smalkin, Hessian, Martin & Taylor, Paul Martin* and *Arnold Fleischmann* on the brief, for appellee.

BRUNE, C. J., delivered the opinion of the Court.

This is a controversy between the divorced parents of a nine year old girl, who will be ten in a few months. At the time of the divorce in 1949, custody of the child was awarded to the mother. In December, 1955, the decree was modified to the extent that custody was awarded temporarily to the father. On October 31, 1956, custody was awarded to the father, with the right to the mother to visit the child at reasonable times and places, all subject to the further order of the Circuit Court for Baltimore County. The appeal is from that decree. (The decree also directed the payment of alimony, but that matter is not in dispute on this appeal.)

It seems unnecessary at this time to review the unhappy marital life of the parties in any detail. Suffice it to say that it got off to a bad start in the two weeks following the marriage, during which time the husband was on leave from the Navy in World War II, that difficulties ensued after his return following the cessation of hostilities, that the wife became emotionally so upset that she attempted suicide and was sent to a State mental institution for two months, from October to December, 1946, that she was then paroled, that a reconciliation followed in January, 1947, that the wife instituted divorce proceedings in May, 1947, that the child, Cheryl Wilhelm, who is the subject of the present controversy was born in October, 1947, and that the wife obtained a decree of divorce on the ground of desertion in May, 1949.

The decree also awarded custody of the child to the wife, who had been completely discharged by the mental institution in December, 1948—a year after her parole. The husband visited the child a few times shortly after her birth and not at all for about the next five years. The wife worked and much of the time lived with her mother and, while at work, left the child in the care of the latter, who is now approximately seventy years of age. The wife has changed her address in Baltimore City frequently and for a time resided in Detroit, to which city she took the child with the approval of the Circuit Court for Baltimore County. The husband was frequently in arrears in the payment of alimony and support for the child under the provisions of the 1949 decree. In 1955 the wife thought, according to her testimony, that she would have to go to a hospital for surgical treatment and for a somewhat protracted stay. She placed the child temporarily in what seems to have been a foster home with a Mrs. Utz. The surgical treatment proved to be unnecessary, and some question is suggested as to the genuineness of the wife's belief that she would need surgery.

In November, 1955, the husband filed a petition for the modification of the 1949 decree and for the award of custody of the child to him. After the divorce he had remarried. His second wife had a daughter approximately the same age as that of his own daughter, and Mr. Wilhelm and the second Mrs. Wilhelm have a son about five years younger. Mr. Wilhelm is engaged in business for himself as a plumber, and he and his family reside at Owings Mills in Baltimore County in what would appear to be a good home, though somewhat small for a family of five.

A hearing was held on the husband's petition for custody in December, 1955, and the next day custody was awarded to him temporarily. A further hearing was held on June 27, 1956. During this hearing Judge Gontrum, who has a notable record in juvenile court work and kindred matters, expressed the desire to obtain another report from the Probation Department as to how the child was getting on in her father's home and to interview the child before making a final

decision in the case. He also said that he might like to have an opinion from a psychiatrist in the case.

A comprehensive report was submitted about a month later by the head of the Probation Department. He had testified at the hearing in June that, in his opinion, the child should stay where she was—that is, in the home of her father and stepmother. His subsequent report supported this opinion. The case had been known to the Probation Department since 1949, and a voluminous file had been built up. The report of July 30, 1956, stated in part: "It would appear generally that neither party has done their utmost for the child involved, the mother changing not only her place of abode regularly but moving from one section of Baltimore to another and the father failing to live up to the court order for support of the child." The report indicated that the father's home was a desirable one and that it would be enlarged to afford the child better living quarters if her custody were awarded to the father.

The custody award of October 31, 1956, was made without the child having been brought in to talk with the Judge. No psychiatric report was obtained, and there was no further hearing after that of June 27th. No opportunity appears to have been sought to cross-examine the Probation Officer with regard to his report of July 30, 1956.

The appellant mother complains that the decree awarding custody to the father is not supported by the evidence. She also complains that the trial court erred in sustaining an objection to a question put to a witness, Mrs. Utz, in whose home the child had been living when the father's custody petition was filed in November, 1955. She had gone with the mother on a number of visits to the child after she had been placed in the temporary custody of the father.

We shall take up the latter point first. The question objected to was this: "Mrs. Utz, you have had occasion to talk to the child since she has been with the father. Can you tell the Court what is the reaction of the child about staying with the father?" An objection to the question was sustained on the ground that the question was too broad. No further effort was made by the mother's then counsel to follow the

matter up. He merely said, "Exception. That is all." The Judge commented, "I will be able to determine that when I see the child." The question does seem broad, and no effort was made to make it more specific as to the witness' observation of the child nor was there any proffer of testimony. This ruling would scarcely seem to call for a reversal, but since for other reasons we are remanding the case for further consideration, we express the view now that at a future hearing Mrs. Utz may be examined with regard to her observations of the child. Her views will, of course, not be binding on the court, but will simply be weighed along with all other relevant evidence in determining what is best for the child.

That, of course, is the determining factor in custody cases. *Butler v. Perry,* 210 Md. 332, 123 A. 2d 453; *Townsend v. Townsend,* 205 Md. 591, 109 A. 2d 765; *Trudeau v. Trudeau,* 204 Md. 214, 103 A. 2d 563. It seems unnecessary to cite additional authority in support of this firmly established rule.

This Court has repeatedly recognized (as in the *Trudeau* case, *supra,* and in *Cullotta v. Cullotta,* 193 Md. 374, 66 A. 2d 919) the importance of the opportunity of the Chancellor to see and hear the witnesses in custody cases and the reluctance of this Court to disturb his findings of fact. In the instant case we do not think that the evidence in the record before us would warrant a holding by this Court that the Chancellor's conclusion was erroneous, or a final decision in favor of the appellant. On the other hand, we think that the Chancellor's expressed desire to see and interview the child before reaching a final decision was sound, and that it should have been carried into effect. (We were told at the argument that the reason why it had not been, was the insistence of the appellant's former counsel upon a decision. This, of course, does not appear in the record.)

In *Ross v. Pick,* 199 Md. 341, 86 A. 2d 463, the desirability of interviewing the child was recognized—in that case largely to ascertain his wishes, which, though not binding upon the court, were thought entitled to consideration. The child in that case was a boy over eleven years old who was described as unusually intelligent. In the instant case a matter of somewhat broader scope and perhaps greater importance is to

ascertain just what the Chancellor said he would "be able to determine * * * when I see the child." That is "the reaction of the child about staying with the father."

*Waller v. Ellis,* 169 Md. 15, 179 A. 289, though not directly in point, lends support to the course which the Chancellor proposed to follow in the present case. The adoption statute in force at the time of that case (Code, 1912, Article 16, Section 74) required as a condition precedent to the passage of a decree of adoption, that "the child, if of sufficient intelligence and capacity to give an understanding assent," should desire the adoption. During the course of the proceedings, apparently when the girl whose adoption was sought was about ten years old, the parties opposing the adoption offered her as a witness, but the offer was refused. This Court held that her testimony should have been allowed to be given. After referring to the statute above quoted, this Court, in an opinion by Judge Offutt, said: "Whether she possessed that intelligence and capacity could, in view of her age, have best been determined by examining her, either when she was offered, or at least before the decree, which was signed more than two years later."

We think that in this case we should follow the course taken in *Young v. Weaver,* 185 Md. 328, 44 A. 2d 748, and remand the case without affirming or reversing the decree for further proceedings, which should include interviewing the child. We believe that a further investigation and report by the Probation Department as to the child's adjustment and development in the months which have elapsed since the report of July 30, 1956, would also be desirable. We note that this period covers a full school year. The desirability of a psychiatric report is a matter as to which we offer no opinion and make no suggestion at this time.

> *Case remanded under rule 871 a of the Maryland rules for further proceedings, without affirming or reversing the decree appealed from; the costs of this appeal to be paid by the appellee.*