MELBA ANN JACKSON *v.* F. B. SMITH

5-5540                                   467 S. W. 2d 704

Opinion delivered June 14, 1971

*House, Holmes & Jewell,* for appellant.

*Moore & Logan;* By: *Roger V. Logan, Jr.,* for appellee.

J. FRED JONES, Justice. Melba Ann Jackson and F. B. Smith are the parents of a nine year old son, Tracy Lynn Smith. In September, 1967, they were divorced in the state of Texas and the custody of the minor child was awarded to the mother with the rights of visitation in the father. The mother married Mr. Jackson in 1968 and in 1970 they moved to Fairfield Bay in Van Buren County, Arkansas, where both Mr. and Mrs. Jackson are employed. Mr. Smith also remarried and on June 1, 1970, he filed a petition in the Van Buren County Chancery Court for a change in custody of the child.

The chancellor awarded a change in custody vesting the exclusive custody of said child in the father, F. B. Smith, subject to the rights of the mother to have the child visit her during Christmas school vacation each year, and from the second Sunday in June to the second Sunday of August of each year, with child support payments to continue at $20 per week during the period the child is with his mother.

On appeal to this court Mrs. Jackson relies on the following points for reversal:

"The court erred in talking with the child privately in chambers.

The court erred in granting permanent custody of the nine year old son to the father."

It is well settled that in child custody cases between divorced parents, the courts are primarily concerned with the welfare of the child. *Stephenson* v. *Stephenson*, 237 Ark. 724, 375 S. W. 2d 659. While chancery cases are tried de novo on appeal, (*Fye* v. *Tubbs*, 240 Ark. 634, 401 S. W. 2d 752) the rule is well established that a decree of the chancery court will not be disturbed on appeal unless it is against the preponderance of the evidence. *Lynn* v. *Quillen*, 178 Ark. 1150, 13 S. W. 2d 624; *Henry* v. *Irby*, 175 Ark. 614, 1 S. W. 2d 49; *Bornhoft* v. *Thompson*, 237 Ark. 256, 372 S. W. 2d 616. This rule is especially applicable in child custody cases where the chancellor is in a position to observe the parties as well as to hear their testimony. *Wilson* v. *Wilson*, 228 Ark. 789. 310 S. W. 2d 500; *Cheek* v. *Cheek*, 232 Ark. 1, 334 S. W. 2d 669.

As to the points relied on, it seems to be universally held that an interview with children in child custody cases is permissible with the consent or acquiescence of the parties. See 24 Am. Jur., Divorce and Separation, § 794. The child involved in the case at bar was a nine year old boy, and when interviewed by the chancellor, with the consent or acquiescence of the parents, we are unwilling to say that his *attitude* and *wishes* should not

have been considered by the chancellor, along with the other evidence in the case, in arriving at his decision as to the child's best welfare and resulting in the decree rendered. The case of *Grumlin* v. *Gray, et ux,* 246 Ark. 622, 439 S. W. 2d 290, cited and relied on by Mrs. Jackson in her brief, is distinguishable from the case at bar. In *Grumlin* the chancellor not only talked with the children in chambers, but he reviewed a welfare department report which was not in the record. In that case we expressed our handicap in having no information about the reasoning that led the chancellor to deny Mrs. Grumlin's petition, but we are not so handicapped in the case at bar.

In the case at bar the chancellor set out in his decree that there had been substantial changes in the circumstances of the parties growing out of the remarriage of both parties since the entry of the decree in Texas. He based his decree on the "oral evidence adduced in court, both parties having agreed that the court should be allowed to talk privately with Tracy Lynn Smith." The chancellor is sustained by the record as to the agreement that he should talk with the child. The record reveals that the solicitor for Mr. Smith requested the chancellor to talk with the child privately and the chancellor stated as follows: "The court would advise or visit with the boy only by the consent of both parties." Whereupon the solicitor for Mrs. Jackson stated: "Your Honor, my client has the child downstairs and for the purpose here if the court wanted to confer with him."

Both Mr. Smith and his present wife testified in the case. Mr. Smith testified as to difficulty he had experienced in exercising his visitation rights under the Texas decree, and as usual, in cases of this nature, there is some conflict in the testimony as to the reason for the difficulty experienced by Smith. The mother of the child had been married twice since she and Smith were divorced, and she had been married to Jackson for approximately two years. As to a part of Smith's difficulty, he testified as follows:

"Q. Since she has been married to this last husband have you ever gone to their home and been ordered away?

A. Yes.

Q. Have you ever been ordered away with a gun?

A. I was told the next time I come there I would be blowed off of the front porch, in those words.

Q. That is quote of what was said?

A. Yes."

Mr. Jackson did not testify in the case and the above testimony of Smith was not contradicted. Mr. Smith's testimony was also to the effect that the mother drinks intoxicants in the presence of the child and is neglectful of him. The evidence also indicates however, that a part of the difficulty was occasioned by Mr. Smith's objection to the way the child's mother was spending the $20 per week child support he was sending to her. Mr. Smith also testified that the child sustained an injury to his arm from the discharge of a sawed-off shotgun loaded with .00 buckshot kept in a a closet of his mother's home.

Mrs. Smith testified that she was anxious to have the child in their home in Texas; that neither she nor Mr. Smith drink intoxicants; that her marriage to Mr. Smith was her first marriage and that they have no children of their own. She testified that her husband had been married to the child's mother twice; that she has come to love the child very much and is anxious to assist in rearing him.

Mrs. Jackson testified that she is presently employed at Fairfield Bay and was also employed in Fort Worth, Texas, before coming to Arkansas. She testified that she attended church with the child in Texas, but

has been unable to do so since coming to Arkansas because of work habits; she says her husband works seven days a week and that she works six and sometimes seven days a week. As to the shotgun accident, Mrs. Jackson testified that she purchased a double-barreled modified (sawed-off) shotgun for protection when she was in Fort Worth; that she usually kept the gun locked up but that she and her husband had been awakened two previous nights before the accident by their dog barking in the backyard,

> "and we could tell that someone was in the alley way and my husband got up and went and got the gun and went outside, and naturally, he couldn't find anything and he brought the gun back and he locked it back up the first night and the second night he didn't lock it up and that is when the accident happened."

Under questioning by the court, Mrs. Jackson testified that the child comes to a playground near the office where she works, and that she is with him off and on during the day. As already stated, Mrs. Smith testified that she is willing and anxious to have the child in their home. Mrs. Jackson testified that she has been married to her present husband for approximately two years and, as already stated, Mr. Jackson did not testify at all in this case.

We are of the opinion that the chancellor's decree is not against the preponderance of the evidence and that it should be affirmed.

The decree is affirmed.