**Maureen Lee RICE, Appellant,**

v.

**Gary Keith RICE, Appellee.**

**No. 51586.**

Supreme Court of Oklahoma.

Nov. 27, 1979.

Parks & Beard by Curtis A. Parks and James A. Williamson, Tulsa, for appellant.

Marvin E. Spears, Tulsa, for appellee.

HODGES, Justice.

This is an appeal from the failure of the trial court to hold the appellee, Gary Keith Rice, in contempt of court for failure to make appellant's car payments, and from the modification of custody of the minor child.

I

The divorce decree entered September 26, 1975, awarded the wife support alimony of $4,600.00, payable at the rate of $146.97 per month which was terminable upon her death or remarriage. The amount represented wife's car payment. Following the divorce, the couple lived together from December, 1975, until December, 1976 or January, 1977, and the wife moved back in with the husband for three or four weeks in March of 1977. It is stipulated by the par-

ties that they did not intend to enter into a common-law marriage. The husband testified he was just "biding his time" during this transitional period. While the parties lived together following the divorce, the husband paid the couple's ordinary living expenses, and the wife made her own car payments. After the final separation of the parties, the husband refused to make the wife's car payments in accordance with the decree. The wife applied for a citation of contempt. The trial court refused to find the husband in contempt. The court held that the parties had modified the decree by mutual agreement, and that the subsequent cohabitation of the parties had rendered the decree null and void.

■ The wife alleges that there was not an agreement between the parties which modified the husband's duty to pay her car payment following her departure from his bed and board. The testimony of the husband taken in its best light, tends to corroborate the wife's contention, and falls short of reflecting either the mutuality of consent or definiteness of terms required for a contractual agreement. It is also asserted by the wife that post-decree cohabitation by the parties did not terminate the provision in the decree for support alimony. We agree.

■ Title 12 O.S.Supp.1976 § 1289 provides that the obligation to pay alimony for support terminates on the death or remarriage of the recipient. A judgment in a divorce decree may only be modified, set aside, or vacated pursuant to one of the provisions contained in 12 O.S.1971 § 1031 unless it is a void judgment. Under the statute applicable at the time, where alimony was awarded, the trial court had no authority in a subsequent application to increase or diminish the amount of alimony awarded for support in the original judgment [1] where there had been no remarriage.

1. *Fischer v. Fischer, 558 P.2d 391 (Okl.1976); Canada v. Canada, 190 Okl. 203, 121 P.2d 989 (1942); Kane v. Kane, 186 Okl. 297, 97 P.2d 771 (Okl.1940).* See Annot., "Divorce: Power of the Court to Modify Decree or Support of Spouse Which Was Based on Agreement of Parties, 61 A.L.R.3d 520, 560 (1975); and Annot., "Power, in Absence of Reservation by Statute or Decree, to Modify Provision in Decree of Divorce or Separation as to Alimony or Separate Maintenance," 127 A.L.R. 741, 743 (1940).

The precise question of the effect on alimony provisions of post-decree cohabitation by a divorced husband and wife without remarriage or common-law marriage has not been considered in Oklahoma. In *Carson v. Carson*, 143 Okl. 274, 288 P. 475 (1930) the Court held that remarriage of the parties to one another subsequent to divorce annuls the alimony decree. As dicta the Court said:

". . . [I]f the wife returns to her husband after a divorce from bed and board, and is reconciled to him, she cannot continue to have alimony. But if she again separates herself in consequence of renewed acts of cruelty, the decree has been held still good, and enforceable notwithstanding the condonation."

An analogous situation was presented in *Frost v. Frost*, 189 Misc. 133, 71 N.Y. S.2d 438, 441 (1947), where the parties cohabited following a divorce without contemplating remarriage. The court held that the wife was not barred from receiving alimony payments, and that she had merely waived her right to alimony during the period of cohabitation with her former husband. We concur with the *Frost* rationale, and hold that the wife is entitled to receive the balance due on the car as alimony for support in conformance with the decree of divorce. The sums due during cohabitation were waived. It is unquestionable that had the parties remarried, the obligation would have terminated. We find, however, that the alimony provisions of the divorce decree were not affected by mere cohabitation between a divorced husband and wife subsequent to the rendition of a decree of divorce.[2] The case is remanded to the trial court to determine the amount of alimony owed after deducting the amounts due during cohabitation of the parties.

## II

The mother argues that the trial court committed error when it awarded custody of the three year old daughter of the parties to the father. At the time the decree was entered, the court awarded reasonable visitation rights and joint custody of the child to both parties on a two-week rotating schedule.[3] Following the hearing of the mother's application for a citation for contempt, the court heard the father's motion to modify. The mother did not file a motion to modify until well after the hearing appealed from in this case. The court found that a substantial change of condition had occurred since the entry of the decree which substantially and materially affected the welfare of the child. The joint custody was changed, and the father was granted exclusive custody subject to reasonable visitation by the mother.

Ordinarily, an order granting custody may not be modified unless facts are disclosed which were unknown, and could not have been reasonably ascertained when the final decree was entered; or unless there is a permanent material and substantial change in the circumstances which directly affect the child's mental, moral or temporal welfare.[4] The best interest of the child is the paramount consideration of the trial court, and where it does not appear the court has abused its discretion it will not be reversed on appeal.[5]

The child has medical problems requiring careful attention, and the evidence presented reflected that the child probably would be better cared for by the father. There was also uncontradicted testimony that the mother had occasionally punished her by striking her with a leather belt.

2. *Peebles v. Peebles, 186 Ga. 222, 197 S.E. 783 (1938); Weiner v. Weiner, 120 N.J.Super. 36, 293 A.2d 229 (1972).*

3. Custody was vested in the mother from Monday at 9:00 a.m. until Friday at 5:00 p.m. and then custody with the father from Friday at 5:00 p.m. until Monday at 9:00 a.m. during the first week. During the second week custody was vested in the mother from Monday at 9:00 a.m. until Wednesday at 5:00 p.m., and then in the father from Wednesday at 5:00 p.m. until Sunday at 9:00 a.m.

4. *Pirrong v. Pirrong, 552 P.2d 383, 386 (Okl. 1976); Gibbons v. Gibbons, 442 P.2d 482, 485 (Okl.1968).*

5. *Duncan v. Duncan, 449 P.2d 267 (Okl.1969).*

However, we find that child custody should be modified, if for no other reason than to eliminate the dual custody provisions of the original decree.

Joint custody has been commonly employed in Oklahoma, and in other jurisdictions, to permit a child to be placed under the care and control of one parent during the school year and with the other parent during summer vacation.[6] Although joint custody has been thought to be an anathema,[7] new studies have proposed that it is preferable under certain conditions.[8] The question of custody, joint or otherwise, must be decided by reference to the consequences for the particular child in each case. The primary contemplation must always be the welfare and best interests of the child. An award of joint child custody is a viable alternative for courts to consider when favorable circumstances are present so that it probably will work.[9]

In this instance the mother specifically testified that: the arrangement was not working well (the child had to be placed in two nurseries); and that the custodial arrangement was not in the child's best interest.[10] We concur with the findings in *Spencer v. Spencer*, 567 P.2d 112, 113 (Okl. App.1977) that split custody on a weekly basis in this case is impractical, logistically and emotionally, if not impossible. Modification of custody is affirmed.

## III

The mother asserts that the trial court committed error when it sustained the

---

6. *Gilbert v. Gilbert, 460 P.2d 929 (Okl.1969); Conrad v. Conrad, 443 P.2d 110 (Okl.1968)*; Annot., "Split," "Divided," or "Alternate" Custody of Children, 92 A.L.R.2d 696, 699 (1963).

7. See J. Goldstein, A. Freud, and A. Solint, *Beyond the Best Interests of the Child,* pp. 37, 38 (1973), in which the authors recommend that all custody determinations be final with custody awarded to one parent, with the non-custodial parent to have no legal right to visit the child unless the custodial parent determined the visits were desirable.

8. H. H. Foster, Jr. and D. J. Freed, "Joint Custody: A Viable Alternative," 15 Trial, pp. 27, 29, 31 (1979); M. L. Ramey, F. Stender, and D. Smaller, "Joint Custody: Are Two Homes Better Than One?" 8 Golden Gate L.Rev. 559 (1979); C. S. Pratt, "Joint Custody," 67 Ky.L. Rev. 271 (1979).

9. Proposed favorable circumstances set forth by H. H. Foster, Jr. and D. J. Freed in "Joint Custody: A Viable Alternative," published in Trial Magazine, Vol. 15, p. 31 (1979) are:
 a) The parties have agreed to joint custody or there has been a prior order for joint custody and experience has shown that the benefits to the child exceed any detriments.
 b) The parties have demonstrated that they are capable of reaching shared decisions in the child's best interests and are able to communicate and to give priority to the child's welfare.
 c) The logistics are such that there is no substantial disruption of the child's routine, schooling, association with friends, religious training, etc. Ordinarily this means close geographical proximity of both parents or a "bird nest" arrangement.

 d) There is no indication that the psychological and emotional needs and development of the child will suffer due to a particular joint custodial arrangement.
 e) The work hours and routine of both parents are such that child care will be suitable at both homes.
 f) Joint custody is in accord with the child's wishes and he does not have a strong opposition to such an arrangement.

10. The testimony of the mother follows:

 Q Do you feel the current situation regarding visitation has been working?
 A No, I do not.
 Q And what do you feel is wrong with the way that it's set up at this time?
 A There's numerous things wrong with it. I think Heather, for one, is not in her best interest. She's—the week she is split up between us—like this week I have her all week from Sunday morning till tomorrow evening. Then she's picked up from my nursery. Monday she'll be in a nursery of mine and he'll pick her up Tuesday and Wednesday—I take that back. He picks her up Friday from my nursery. She will be in his nursery Monday. I'll pick her up Monday night, she'll be in my nursery Tuesday and Wednesday. Then she goes back to his nursery Thursday and Friday, interchanging the activities one right after the other, I don't think it's to her advantage to do that.
 Q Are you asking the Judge to change the visitation?
 A Yes. I would like to have it modified to where he would have her alternating weekends so she could get some kind of regularity in her life.

motion to strike from the record all testimony concerning the father's possession or use of marijuana.

Jennifer Ross, a witness who admittedly was engaged in a legal dispute with the father, testified that he had used marijuana in his home, and that he had permitted others to do so. However, when she was questioned on cross-examination, she refused to answer. The father's counsel moved to strike the testimony, and the motion was sustained.

When a witness answers a question in an unresponsive manner, and objection is made to the response, the trial court may permit the testimony to stand, or grant the motion to strike. The determinative test concerning whether to strike the testimony is if the answer would unduly prejudice one of the litigants.[11] The refusal of the witness to fully answer the questions propounded concerning the incident of the use of marijuana by the father justified the trial court's refusal to consider the testimony.

### IV

The costs of appeal are to be divided equally between the parties, and each party is directed to pay his/her own attorney fees.

**REVERSED AND REMANDED WITH DIRECTIONS.**

All the Justices concur.

---

11. *Danner v. Chandler, 205 Okl. 181, 236 P.2d 503, 506 (1951); Titsworth v. State, 368 P.2d 526 (Okl.Crim.1962).*