**Jimmy Ray STOVER, Appellee,**

v.

**Lahoma J. STOVER, Appellant.**

**No. 59686.**

Court of Appeals of Oklahoma,
Division 4.

Sept. 25, 1984.

Released for Publication by
Order of the Court of Appeals
Oct. 19, 1984.

Eddie Y. Newcombe, Newcombe & Redman, Lawton, for appellee.

Githen K. Rhoads, Rhoads & Johnson, Lawton, for appellant.

BRIGHTMIRE, Judge.

In September 1980 Jimmy Stover obtained a divorce from his wife, Lahoma, the mother of the couple's 9 and 5-year-old girls, but his request for custody was rejected. On January 6, 1982, the father again asked the court to grant him custody of his daughters. January 28, 1982, the decree was modified and split custody was ordered, granting the father custody dur-

ing the school session and the mother during the summer months until August 1982. On August 25, 1982, the January custodial arrangement was reaffirmed but the children were left with the mother until January 1, 1983. The mother filed a motion for new trial on December 9, 1982, asking the court to vacate a December 3 order—an order not in, or otherwise referred to in, the record. The new trial motion was overruled January 3, 1983, and this appeal was filed February 2, 1983, evidently from the January 3 ruling and asked for review of a December 3 order saying the court abused its discretion "in awarding custody of the minor daughters to the Plaintiff/father."

Assuming we have jurisdiction to review, we affirm.[1]

I

The father first moved to modify the child custodial provision of the decree on May 8, 1981. A series of motions and delays kept the matter from being heard for several months. Then, on December 22, 1981, the father went to the mother's home to pick up the children for Christmas vacation. As he stood in the entry hall, the mother approached with a 357 Magnum pistol. At a distance of about 6 or 8 feet, she aimed the deadly weapon and squeezed the trigger. The deafening explosion sent a lethal lead missile streaking toward the father, missing him by only inches, and on out of doors in the direction of a pickup truck occupied by the two minor children.

The mother admitted loading the gun and shooting at the hapless man. But said she, "I didn't intend to shoot him."

Why, then, did she do what she did? "I was in fear," she said. "He's not supposed to come in."

She did not know whether the older daughter invited him in or not. "I was combing Mitzi's hair, so therefore, I know she did not." Lagina was not supposed to

have invited him in because the visitation is with the children, "not us," evidently referring to herself and a man she cohabited with for some time prior to marrying him shortly before subject hearing.

The main reason she gave for the dangerous assault was that she felt threatened by his previous showing of affection for her, his attempts to kiss her, and his writing notes to her closing with "I love you."

And so as she and Mitzi left the bathroom, she said, "we walked out the door and he was coming down the hallway and I said—I told him right then, I said, 'Jimmy, get out of here. Don't touch me.' And he said, 'I'm not going to bother you.'"

Other testimony disclosed that the mother's new husband—Raymond Smith, an ex-convict—had given her the Magnum weapon with which to protect herself. And more violence had occurred in the past according to Smith. He admitted he once hit the father in the face allegedly after the latter "took a swing" at him.

Aside from the shooting incident, the mother admitted she had used money from Lagina's savings account without replacing it and that she had once rubbed the girl's face in wet bed clothes as a means of curing a bedwetting problem.

A chamber examination of the children by the judge alone found the younger girl, Mitzi, expressing no parental preference but the older one, on the other hand, requesting to live with her father because she said she received better care and because his method of handling her nocturnal kidney problem was less loathsome and a lot more effective—he woke her up during the night. It should be mentioned at this point that Mitzi had earlier indicated she did not want to be separated from her sister—a desire that no doubt affected the court's decision.

1. Jurisdiction to review is doubtful. According to the record, the last custody order of the court was made August 25, 1982. This order was not attacked by a motion for a new trial within 10 days after its rendition nor was an appeal taken

from it within 30 days. It became final. The mother's motion for new trial filed on December 9, 1982, appears to have been way out of time and therefore did not operate to extend the time for an appeal from the August 25 order.

## II

The mother's contention that a custodial change could not be made without proof of her unfitness is an incorrect perception of the law. Nor does her subsidiary argument, that the trial court should not "rely on the whims and fancies of small children" in awarding custody, have any evidentiary foundation with regard to the custodial decision assailed in this appeal. His order, as we have seen, had a much more substantial footing.

As a general rule a child custody order should not be modified absent evidence of a substantial change of condition, coupled with a showing that it will advance the child's best interests. But proof of a substantial change is not always necessary. Occasionally, facts may surface in a case which were unknown and not reasonably ascertainable at the time a final decree was rendered which require a custodial modification to safeguard the minor's interests. *Rice v. Rice*, 603 P.2d 1125 (Okla.1979). Likewise post-decretal occurrences or circumstances may justify such a modification. *Gibbons v. Gibbons*, 442 P.2d 482 (Okla.1968).

We think here the post-decree occurrences and circumstances threw enough new light on the mother's mental instability and harm-potential propensities to invoke judicial inquiry into whether the principal objective—promotion of the children's positive interests—would more likely be accomplished by a custodial change. The evidence was such that it cannot be said the trial court abused its discretion in finding it would be.

Though no complaint is made of confiding custody of the girls in the mother for a three-month period, we are concerned about whether the reasons underlying the change order mitigate against such a long maternal period. The court should monitor this arrangement to assure that the interests of the young ones are not offended.

The order appealed is affirmed.

DeMIER, P.J., and STUBBLEFIELD, J., concur.