2010 OK 85

**Angela Lee FOSHEE, Appellee/Petitioner,**

v.

**Kenneth Michael FOSHEE, Appellant/Respondent.**

No. 106,061.

Supreme Court of Oklahoma.

Dec. 7, 2010.

Sean P. Downes, Sapulpa, OK, for Appellee/Petitioner.

Stephen J. Modovsky, Sidney A. Martin, Tulsa, OK, for Appellant/Respondent.

KAUGER, J:

¶1 This cause involves the termination of joint custody and whether: 1) a material change in circumstances occurs if parents are no longer able or willing to execute parenting duties jointly so that joint custody must be modified; 2) the trial court erred in awarding sole custody to the mother; and 3) the trial court erred in awarding attorney fees to the mother who sought to terminate joint custody.

¶2 We hold that when parents are unable or unwilling to execute parenting duties jointly, a material change in circumstances occurs requiring joint custody to be modified, and that one parent must be given primary responsibility for the child or children. Under the facts presented, the trial court neither erred when it terminated joint custody and awarded sole custody to the mother, nor in awarding the mother attorney fees.

## FACTS

¶3 On December 14, 2006, the appellee/petitioner, Angela Lee Foshee (mother), filed a petition for divorce from the appellant/respondent, Kenneth Michael Foshee (father). The couple had three boys: Z.M., T.M. and P.M., who were 14, 13, and 9, when the divorce was filed. On December 21, 2006, the parents filed a joint custody plan for the children agreeing to share rights, responsibilities, and decision-making authority. That same day, the trial court approved the proposed joint custody plan and granted the divorce.

¶ 4 Nine months later, on September 19, 2007, the mother filed a motion to terminate joint custody because it was no longer in the children's best interest. She also sought a modification of child support and an award of attorney fees and costs.[1]

¶ 5 The trial court held a hearing on December 13, 2007. At the hearing, the mother testified that: 1) she and the father do not get along very well; 2) they cannot communicate on many issues; 3) the father uses profanity and speaks inappropriately to the children and to the mother and is verbally aggressive towards the mother; 4) in the presence of the children, the father told the mother he "had a bullet waiting for her" and he damaged several items in her house during an argument; 5) the father was uncooperative and non-participatory with the children's education or medical care; and 6) the father had argued and fought with the children, particularly the eldest. However, on cross-examination, it did appear at least some of the hostility towards the mother was related to an incident in which the father, just a week after the divorce, discovered that the mother was involved with one of his friends.

¶ 6 On January 29, 2008, the trial court issued an interim order which: 1) suspended the joint custody plan; 2) awarded custody of the children to the mother; 3) required that the father's visitation be professionally supervised with the exception of Christmas day when the grandparents were required to be present; and 4) modified child support. Another hearing continuing the matter was held on March 6, 2007. This hearing consisted of a re-examination of the events which were described in the previous hearing and further elaboration of how the parents were not able to get along joint-parenting. The father attempted to have a licensed professional counselor testify regarding his "anger management" issues, or lack thereof, but the trial court disallowed the testimony.

¶ 7 During the March hearing, the trial court proposed that the children be interviewed *in camera* regarding custody, on the record (with a court reporter), but outside the presence of counsel and the parents. It appears that the parties did not object to this procedure. On April 2, 2008, the trial court conducted an *in camera* interview of the three children. At the conclusion of the interview, the trial court closed and sealed the transcript.[2]

---

1. In response to the mother's motion, the father requested that the trial court appoint a parenting coordinator pursuant to 43 O.S. Supp.2003 § 120.2(2) to assist both parents in communicating and resolving their conflicts. The mother objected to the appointment of a parenting counselor. Title 43 O.S. Supp.2003 § 120.2 provides:

 As used in the Parenting Coordinator Act:
 1. "Parenting coordinator" means an impartial third party qualified pursuant to subsection A of Section 120.6 of this title appointed by the court to assist parties in resolving issues and deciding disputed issues pursuant to the provisions of the Parenting Coordinator Act relating to parenting and other family issues in any action for dissolution of marriage, legal separation, paternity, or guardianship where a minor child is involved; and
 2. "High-conflict case" means any action for dissolution of marriage, legal separation, paternity, or guardianship where minor children are involved and the parties demonstrate a pattern of ongoing:
 a. litigation,
 b. anger and distrust,
 c. verbal abuse,
 d. physical aggression or threats of physical aggression,
 e. difficulty in communicating about and cooperating in the care of their children, or

 f. conditions that in the discretion of the court warrant the appointment of a parenting coordinator.

 It appears that the perception of the trial court was that this request was subsequently withdrawn, but in its order of June 6, 2008, the court determined that the application was overruled as moot.

2. On January 30, 2009, the father sought an order from this Court seeking release of the April 2, 2008, *in camera* examination of his children, arguing that a copy of the transcript was essential to the preparation of his appeal. We retained this cause on April 16, 2009, before the briefing cycle began. We issued an order to the trial court on September 29, 2009, noting that 43 O.S. Supp.2002 § 113, see note 4, infra, required the trial court to state, in the record, in writing: 1) the reasons for excluding the parties and the attorneys from the examination; 2) the reasons for sealing the transcript and precluding the parties and attorneys from reviewing it; and 3) why the transcript should not now be unsealed and made available to the parties. On October 14, 2009, the trial court responded, explaining that the parties and their attorneys were excluded from the *in camera* interview of the children because the children might be under the percep-

¶ 8 On June 6, 2008, the trial court entered its decision and order which determined that joint custody was no longer in the children's best interest. The court also: 1) awarded sole custody to the mother; 2) ordered both parents to attend a "helping children cope with divorce or cooperative parenting course;" 3) ordered the father to complete an anger management course, and until its completion, required that visitation with the children in the presence of at least one of the father's parents or another adult approved by the mother; 4) determined visitation; and 5) modified child support. On June 9, 2008, the mother filed an application for attorney fees and costs which the trial court awarded on June 17, 2008. The father filed an appeal on July 3, 2008, seeking a review of the termination of joint custody, and the award of sole custody and attorney fees.

¶ 9 I.

**WHEN PARENTS ARE UNABLE OR UNWILLING TO EXECUTE PARENTAL DUTIES JOINTLY, A MATERIAL CHANGE IN CIRCUMSTANCES HAS OCCURRED SUCH THAT JOINT CUSTODY MUST BE MODIFIED AND ONE PARENT MUST BE GIVEN PRIMARY CUSTODY. UNDER THE FACTS PRESENTED, THE TRIAL COURT DID NOT ERR WHEN IT TERMINATED JOINT CUSTODY AND AWARDED SOLE CUSTODY TO THE MOTHER.**

■ ¶ 10 The father argues that: 1) the trial court erred in terminating joint custody because the children preferred that the existing joint custody arrangement continue; and 2) no change in circumstances sufficient to modify the existing joint custody had occurred. The mother counters that the agreed joint custody plan was not working between the parents and that it was absolutely necessary for the trial court to terminate joint custody. Having found it necessary and appropriate to terminate the joint custody plan, the mother contends that the trial court was required to make a custody determination, and it was in the children's best interest to award sole custody to her.

¶ 11 Without disclosing all of details the children's sealed testimony, we note that all three children testified regarding joint custody. Two children preferred to live with both parents equally, half and half. One child preferred to stay primarily with the father. The linchpin of the father's argument is that because the children generally preferred that the current custody plan remain unchanged, it must remain "as is." This is not the law in Oklahoma.

¶ 12 Title 43 O.S.2010 § 110.1 codifies the state's policy of assuring that minor children have frequent and continuing contact with their parents who have shown the ability to act in their children's best interest and of encouraging parents to share in the rights and responsibilities of rearing their children after separation or divorce—provided the parents agree to cooperate.[3] When determining custody, the trial court is allowed, and

tion that they could be punished for not saying what a parent wanted them to say; and a great deal of non-verbal information is conveyed by the children when parents or their lawyers are not present. The court also indicated that the transcripts were sealed from the parties and their counsel because if the testimony were disclosed, the children could be intimidated, confronted, punished or retaliated against for their testimony or a chilling effect could be had on the future candor of the children. In particular, the court was concerned with the father in that he had previously knocked pictures off the wall and broke things, threatened the mother, punched the oldest child in the chest and said inappropriate things to and in front of all of the children. On April 26, 2010, after the briefing cycle was complete, by special order, we held that pursuant to *Ynclan v. Woodward*, 2010 OK 29, 237 P.3d 145, when a parent appeals a custody determination, unless access has been waived, due process requires that the parents have access to the *in camera* testimony of the preference of their children. Because due process required that the father be allowed to review the *in camera* transcript, we unsealed it as to the parties and their attorneys and returned the newly unsealed transcript to the district court to allow both parents an opportunity to review the transcript and amend their appellate briefs. On May 3, 2010, the trial judge, Honorable April Sellers White, filed a supplemental response to our order and requested that we reconsider it. The request to reconsider was denied on June 14, 2010, and neither party chose to amend their briefs. The remaining issues relate to the termination of joint custody and the award of attorney fees to the mother.

3. Title 43 O.S. Supp.2009 § 110.1 provides:

if the child is old enough, required to consider the preference of the children when determining custody.[4]

 ¶ 13 However, the preference of the child is just that—a preference. We have

> It is the policy of this state to assure that minor children have frequent and continuing contact with parents who have shown the ability to act in the best interests of their children and to encourage parents to share in the rights and responsibilities of rearing their children after the parents have separated or dissolved their marriage, provided that the parents agree to cooperate and that domestic violence, stalking, or harassing behaviors as defined in Section 109 of this title are not present in the parental relationship. To effectuate this policy, if requested by a parent, the court may provide substantially equal access to the minor children to both parents at a temporary order hearing, unless the court finds that shared parenting would be detrimental to the child.

4. Title 43 O.S. Supp.2002 § 113 provides:

> A. In any action or proceeding in which a court must determine custody or limits of or period of visitation, the child may express a preference as to which of its parents the child wishes to have custody.
> B.1. The court shall determine whether the best interest of the child will be served by the child's expression of preference as to which parent should have custody or limits of or period of visitation rights of either parent. If the court so finds, the child may express such preference or give other testimony.
> 2. If the child is of a sufficient age to form an intelligent preference, the court shall consider the expression of preference or other testimony of the child in determining custody or limits of or period of visitation. The court shall not be bound by the child's choice and may take other facts into consideration in awarding custody or limits of or period of visitation. However, if the child is of a sufficient age to form an intelligent preference and the court does not follow the expression of preference of the child as to custody, or limits of visitation, the court shall make specific findings of fact supporting such action if requested by either party.
> 3. There shall be a rebuttable presumption that a child who is twelve (12) years of age or older is of a sufficient age to form an intelligent preference.
> C. If the child expresses a preference or gives testimony, such preference or testimony may be taken by the court in chambers without the parents or other parties present. If attorneys are not allowed to be present, the court shall state, for the record, the reasons for their exclusion. At the request of either party, a record shall be made of any such proceeding in chambers.

never held that child preference is "the" deciding factor when determining custody or modifying custody. Rather, it is merely one of many factors which the trial court is required to consider.[5] In *Ynclan v. Woodward*, 2010 OK 29, 237 P.3d 145, we ex-

5. Title 43 O.S. Supp.2002 § 113 see note 4, supra. As early as 1932, Oklahoma began considering the child's custodial preference. *Garlin v. Garlin*, 1932 OK 52, ¶ 0, 7 P.2d 463. Oklahoma's statute, 43 O.S. Supp.2002 § 113, see note 4, supra, was first enacted in 1975 as 12 O.S. Supp.1975 § 1277.1. Although it did not specifically address private, *in camera* interviews, it did allow the trial court to consider a child's preference in custody disputes as one factor in considering custody. Certainly by 1975, many courts recognized the universal acceptance of conducting private interviews with children in custody proceedings. *See generally*, S. Bernstein, Annotation, *Propriety of Court Conducting Private Interview with Child in Determining Custody*, 99 A.L.R.2d 954 (1965). *See Jackson v. Smith*, 250 Ark. 923, 467 S.W.2d 704, 705 (1971); *Conkling v. Conkling*, 185 N.W.2d 777, 785 (Iowa 1971); *Winkler v. Winkler*, 252 Ind. 136, 246 N.E.2d 375, 376 (1969); *duPont v. duPont*, 59 Del. 206, 216 A.2d 674, 681–82 (1966); *Lawson v. Lawson*, 87 Idaho 444, 394 P.2d 1008, 1010 (1964); *Seelandt v. Seelandt*, 24 Wis.2d 73, 76–77, 128 N.W.2d 66 (1964); *Franks v. Franks*, 163 Ind.App. 346, 323 N.E.2d 678, 681 (1975); *Gonyea v. Gonyea*, 232 Or. 367, 375 P.2d 808, 811 (1962); *Correll v. Newman*, 236 Miss. 545, 111 So.2d 643, 645 (1959); *Bowler v. Bowler*, 351 Mich. 398, 88 N.W.2d 505, 509 (1958); *Johnson v. Johnson*, 7 Utah 2d 263, 323 P.2d 16, 17–18 (1958); *Douglas v. Sheffner*, 79 Wyo. 172, 331 P.2d 840, 845 (Wyo.1958), *superseded on other grounds* by *In re Interest of MKM*, 792 P.2d 1369 (Wyo.1990); *Nelson v. Nelson*, 43 Wash.2d 278, 280, 260 P.2d 886 (1953); *Callen v. Gill*, 7 N.J. 312, 319, 81 A.2d 495 (1951); *In re Marriage of Armbeck*, 33 Colo.App. 260, 518 P.2d 300, 301 (1974); *Kitchens v. Kitchens*, 305 So.2d 249, 250 (D.C.Fla. 3rd 1974); *Brown v. Brown*, 510 S.W.2d 14, 16 (Ky.Ct.App.1974); *Lincoln v. Lincoln*, 24 N.Y.2d 270, 247 N.E.2d 659, 299 N.Y.S.2d 842, 845 (1969); *Stickler v. Stickler*, 57 Ill.App.2d 286, 206 N.E.2d 720, 723 (1965); *Oakes v. Oakes*, 45 Ill.App.2d 387, 195 N.E.2d 840, 844 (1964); *Baker v. Vidal*, 363 S.W.2d 158, 159 (Tx.App.1962); *Wilhelm v. Wilhelm*, 214 Md. 80, 133 A.2d 423 (1957); *Jenkins v. Jenkins*, 125 Cal.App.2d 109, 269 P.2d 908, 910–11 (Cal.App. 1954); *Hicks v. Hicks*, 26 Tenn.App. 641, 176 S.W.2d 371, 377 (1943). *Paryzek v. Paryzek* 776 P.2d 78, 81 (Utah App.1989). *Kitchens v. Kitchens*, supra; *Jeantete v. Jeantete*, 111 N.M. 417, 806 P.2d 66, 69 (1990). In addition to 43 O.S. Supp.2002 § 113, see note 4, supra, 43 O.S.2001 § 112.2 lists some mandatory considerations when considering custody. Oklahoma caselaw also enumerates several factors to be considered when considering the best interests of the child

plained the statutory implications of a child's preference, we said in ¶ 13 that:

... The preference of the child is only one of many factors to be considered when determining the child's best interest concerning custody. It should never be the only basis for determining custody. Nor should a child be directly asked where the child would rather live because specifically asking preference provides an opportunity for parental manipulation or intimidation of the child as well as an opportunity for the child to manipulate the parents. It also gives the child the impression that their preference is "the" deciding factor for custody. Rather, the trial court should conduct such an interview so as to discern the child's preference, while at the same time, being sensitive to how the child is coping with the divorce, the pressures put on the child by the divorce and stating a

preference, as well as to ascertain the motive of the child in stating a preference. When the trial court determines the child's best interest will be served by considering the child's preference, whether to hold such an interview is generally within the trial court's discretion. (Citations omitted.)

¶ 14 Consequently, the issue in this cause is not whether the children were opposed to changing joint custody, but, whether the fact that parents are no longer able or willing to execute joint custody duties, constitutes a material change in circumstances such that joint custody must be terminated and sole custody awarded to one parent.[6] Title 43 O.S.2001 § 109 governs joint custody proceedings and it defines joint custody as the sharing by parents in all or some of the aspects of physical and legal care, custody, and control of their children.[7] Pursuant to

---

in determining custody. The best interests of the child must be a paramount consideration of the trial court when considering custody and visitation. *Daniel v. Daniel*, 2001 OK 117, ¶ 21, 42 P.3d 863. Many factors have been used to consider custody determinations. Some previous factors have also included: the interest the parent shows in the child [*Rice v. Rice*, 1979 OK 161, ¶ 9, 603 P.2d 1125; *Park v. Park*, 1980 OK CIV APP. 19 ¶ 6, 610 P.2d 826]; stability [*Gilbert v. Gilbert*, 1969 OK 133, ¶ 6, 460 P.2d 929]; and lifestyle [*Brim v. Brim*, 1975 OK CIV. APP 4, ¶ 9, 532 P.2d 1403; *Cooper v. Cooper*, 1980 OK CIV APP 12, ¶ 8, 610 P.2d 1226].

6. The father relies on several cases from our Court of Civil Appeals in support of his argument. The Court of Civil Appeals opinions are not binding on this Court, but even if they were, *Hogue v. Hogue*, 2008 OK CIV APP 63, 190 P.3d 1177 and *Nelson v. Nelson*, 2004 OK CIV APP 6, 83 P.3d 911 both involve the children's preference when modifying custody from one parent to the other, not modifying or terminating joint custody which is altogether different. In that context, we have not addressed the appropriate weight to be given to a child's preference when the child's change in preference is the only change which has occurred, nor do we do so today. Additionally, *Eimen v. Eimen*, 2006 OK CIV APP 23, 131 P.3d 148 involved a trial court which refused to modify joint custody and on appeal, the Court of Civil Appeals determined that modification was in the children's best interest and then proceeded to look at the children's preferences. The children's preferences have likewise been considered here, but *Eimen* did not involve a father who was hostile; verbally abusive; did not always get along well with the children, said inappropriate things to and in

front of all of the children; and showed hostility towards the mother in front of the children. Consequently, the rationale of *Eimen* is not persuasive here.

7. Title 43 O.S.2001 § 109 provides:

A. In awarding the custody of a minor unmarried child or in appointing a general guardian for said child, the court shall consider what appears to be in the best interests of the physical and mental and moral welfare of the child.

B. The court, pursuant to the provisions of subsection A of this section, may grant the care, custody, and control of a child to either parent or to the parents jointly.
For the purposes of this section, the terms joint custody and joint care, custody, and control mean the sharing by parents in all or some of the aspects of physical and legal care, custody, and control of their children.

C. If either or both parents have requested joint custody, said parents shall file with the court their plans for the exercise of joint care, custody, and control of their child. The parents of the child may submit a plan jointly, or either parent or both parents may submit separate plans. Any plan shall include but is not limited to provisions detailing the physical living arrangements for the child, child support obligations, medical and dental care for the child, school placement, and visitation rights. A plan shall be accompanied by an affidavit signed by each parent stating that said parent agrees to the plan and will abide by its terms. The plan and affidavit shall be filed with the petition for a divorce or legal separation or after said petition is filed.

§ 109, after a joint custody plan is issued, the trial court may terminate a joint custody decree upon the request of one or both of the parents or whenever the court determines the decree is not in the best interests of the child or children.

¶ 15 The most recent, seminal case for terminating joint custody in Oklahoma is *Daniel v. Daniel*, 2001 OK 117, 42 P.3d 863. In *Daniel*, the agreed joint custody arrangement was not working, partially because the mother had moved out of state, but mostly because the parents were hostile and unable to agree and cooperate with one another. Regarding the termination of joint custody and awarding sole custody to a parent, we

noted that a change in custody from joint to one parent differs from a change in custody from a one custodial parent to a non-custodial parent.[8] Joint custody will not succeed without the cooperation of the parties. When it becomes apparent to the court that joint custody is not working and it is not serving the child's best interest, then a material and substantial change of circumstance has occurred and the joint custody arrangement must be vacated.[9]

¶ 16 We again reiterate that pursuant to our precedents of *Daniel v. Daniel*, 2001 OK 117, 42 P.3d 863 and *Rice v. Rice*, 1979 OK 161, 603 P.2d 1125, notwithstanding the preference of the children, or the physical

---

D. The court shall issue a final plan for the exercise of joint care, custody, and control of the child or children, based upon the plan submitted by the parents, separate or jointly, with appropriate changes deemed by the court to be in the best interests of the child. The court also may reject a request for joint custody and proceed as if the request for joint custody had not been made.

E. The parents having joint custody of the child may modify the terms of the plan for joint care, custody, and control. The modification to the plan shall be filed with the court and included with the plan. If the court determines the modifications are in the best interests of the child, the court shall approve the modifications.

F. The court also may modify the terms of the plan for joint care, custody, and control upon the request of one parent. The court shall not modify the plan unless the modifications are in the best interests of the child.

G.1. The court may terminate a joint custody decree upon the request of one or both of the parents or whenever the court determines said decree is not in the best interests of the child. 2. Upon termination of a joint custody decree, the court shall proceed and issue a modified decree for the care, custody, and control of the child as if no such joint custody decree had been made.

H. In the event of a dispute between the parents having joint custody of a child as to the interpretation of a provision of said plan, the court may appoint an arbitrator to resolve said dispute. The arbitrator shall be a disinterested person knowledgeable in domestic relations law and family counseling. The determination of the arbitrator shall be final and binding on the parties to the proceedings until further order of the court.

If a parent refuses to consent to arbitration, the court may terminate the joint custody decree.

The statute was amended effective November 1, 2009, and it also requires the trial court to con-

sider domestic violence and the parents' history of verbal threats or aggressive behavior, etc.

8. Ordinarily, a change of custody is justified when the case falls into one of two categories: 1) when circumstances of the parties have changed materially since the prior custody order; or 2) when material facts are revealed which were unknown, and could not have been ascertained with reasonable diligence when the final divorce decree was entered. When a change in custody is requested based on a change of circumstances, the parent asking for modification must establish: 1) a permanent, substantial and material change in circumstances; 2) the change in circumstances must adversely affect the best interests of the child; and 3) the temporal, moral and mental welfare of the child would be better off if custody is changed to the other parent as requested. Here, however, there is no change in custody from one parent to the other because both parties were awarded custody of the child pursuant to a court ordered joint custody arrangement *Daniel v. Daniel*, 2001 OK 117, ¶ 17, 42 P.3d 863.

9. The Court also addressed the modification of joint custody in *Rice v. Rice*, 1979 OK 161, 603 P.2d 1125. The *Rice* father filed a motion to modify joint custody and sought sole custody of his child. The trial court, after considering testimony that the arrangement was not working well, and that it was not in the child's best interest terminated joint custody and awarded sole custody to the father. The *Rice* Court recognized that joint custody can be favorable and has been commonly employed in Oklahoma, and in other jurisdictions, to permit a child to be placed under the care and control of one parent during the school year and with the other parent during summer vacation. Nevertheless, the Court, recognizing that the best interest of the child is of paramount consideration, affirmed the trial court, holding that child custody should be modified, if for no other reason than to eliminate the dual custody provisions of the original decree.

location of the parents, joint custody is not proper where the parents are unable to cooperate.[10] Joint custody requires parents who: 1) have an ability to communicate with each other even though they are no longer married; 2) are mature enough to put aside their own differences; and 3) who work together and engage in joint discussions with each other and make joint decisions regarding the best interest of their children.

¶ 17 Here, the record contains ample evidence that the joint custody arrangement was not working and that the parties were unable to agree and cooperate with each other. Several instances of uncooperativeness between the parents were presented to the trial court. The trial court's determination that joint custody should be terminated is clearly supported by the evidence.

¶ 18 Again, as we stated in *Daniel*, supra at ¶ 21:

When joint custody is terminated the trial court must proceed as if it is making an initial custody determination and award custody in accordance with the best interest of the child, as if no such joint custody decree had been made. In a divorce action, the trial court is vested with discretion in awarding custody and visitation. Nevertheless, the best interests of the child must be a paramount consideration of the trial court when determining custody and visitation. On appeal, this Court will not disturb the trial court's judgment regarding custody absent an abuse of discretion or a finding that the decision is clearly contrary to the weight of the evidence. The burden is upon the party appealing from the custody and visitation award to show that the trial court's decision is erroneous and contrary to the child's best interests. (Citations omitted.)

¶ 19 It is at this stage in the proceeding that the trial court should consider the preference of the children regarding custody. We have reviewed the transcripts and the record in this cause and cannot say that the trial court's determination was contrary to the children's best interest. It is clear from the children's testimony that their primary concern was getting to spend equal time with each parent. This issue can be dealt with the children's visitation schedules or by physical custody arrangements, but it has nothing to do with the question of whether the parents are capable of exercising cooperative joint custody.

¶ 20 The father insists that the trial court gave "overriding" significance to an event which occurred at the beginning of the parent's break-up and which led to its ordering that the father undergo anger management as a precondition for unsupervised visitation.[11] Notwithstanding this isolated incident, or whether the father could have shown that he did not suffer from anger management issues,[12] there was still enough conflicting testimony presented by both parents relating to what was in the children's best interest.[13] The judgment of the trial

---

10. The Court of Civil Appeals has followed this reasoning both before and after *Daniel v. Daniel*, 2001 OK 117, 42 P.3d 863 was decided. For example in *Dunham v. Dunham*, 1989 OK CIV APP 44, ¶ 4, 777 P.2d 403 the court noted that the party's opposition to joint custody is in effect the antithesis of the concept of joint custody and to force joint custody on an unwilling parent should always give the trial court pause; and in *Moore v. Moore*, 2009 OK CIV APP 27, ¶ 12, 209 P.3d 318 the court determined that where evidence established parents could not cooperate, joint custody was properly terminated. Although we need not exhaustively list them, there are at least a dozen cases in which our Court of Civil Appeals has affirmed the termination of joint custody because the evidence reflected that the parents were simply unable or unwilling to cooperate effectively. *But see, Kilpatrick v. Kilpatrick*, 2008 OK CIV APP 94, 198 P.3d 406 where the court refused to terminate joint custody because the parents were able to resolve their issues with the assistance of a parenting coordinator.

11. The "incident" was one in which the father knocked pictures off the wall and broke things and threatened the mother after discovering his friend with the mother in the early morning hours when he was returning the children to her.

12. The father voluntarily visited a licensed professional counselor who evaluated the father and determined that there was a very low possibility that he had any type of anger syndrome, but the Court refused to permit the witness to testify regarding whether the father had an anger management problem.

13. There was evidence that the father: 1) was uncooperative with the custody schedule; 2) had

court which awarded sole custody to the mother is not against the weight of the evidence nor an abuse of discretion.[14]

## ¶ 21 II.

### THE TRIAL COURT DID NOT ERR IN AWARDING ATTORNEY FEES TO THE MOTHER.

¶ 22 The father argues that the trial court erred in awarding the mother attorney fees.[15] Title 43 O.S. Supp.2003 § 110 authorizes the award of attorney fees.[16] In *King v. King*, 2005 OK 4, ¶ 30, 107 P.3d 570, we recognized that in Oklahoma, neither the nonprevailing party in a matrimonial case nor the principal spouse provider is under a duty to pay counsel fees. Rather, counsel-fee allowances are granted only to the litigant who qualifies for the benefit through the process of a judicial balancing of the equities.[17] A review of the record reflects that the imposition of attorney fees appears reasonable. Considering it was largely the father's hostility and unwillingness to cooperate in joint parenting, equity supports the award to the mother. Accordingly, we affirm the trial court's awarding of attorney fees to the mother.

## CONCLUSION

¶ 23 Because the parties are no longer able to work together, we hold that there has been a material change in circumstances warranting a modification of the joint custody arrangement, and the evidence shows that an award of custody to one of the parents, was required. We affirm the trial court's decision that the children's best interest would be served by awarding sole custody to the mother. The trial court's award of attorney fees is also affirmed.

EDMONDSON, C.J., TAYLOR, V.C.J., HARGRAVE, KAUGER, WINCHESTER, REIF, JJ., concur.

WATT, COLBERT, JJ., concur in part, dissent in part.

subjected the children to inappropriate remarks and behavior; and 3) maintained a hostile, threatening and disrespectful attitude toward the mother. The trial court is better able to determine controversial evidence by its observation of the parties, the witnesses, and their demeanor. *Daniel v. Daniel,* 2001 OK 117, ¶ 22, 42 P.3d 863; *Manhart v. Manhart,* 1986 OK 12, ¶ 15, 725 P.2d 1234; *Perry v. Perry,* 1965 Ok 160, ¶ 5, 408 P.2d 285.

14. *Daniel v. Daniel,* see note 13, supra at ¶ 21. *Manhart v. Manhart,* see note 13, supra; *Duncan v. Duncan,* 1969 OK 7, ¶ 13, 449 P.2d 267; *Waller v. Waller,* 1968 OK 42, ¶ 17, 439 P.2d 952. The burden is on the appealing party to show that the decision is contrary to the child's best interests. *Daniel,* supra; *Manhart,* see note 13, supra.

15. The total amount of attorney fees awarded was $3,253.00 with post-judgment interest accruing form the date of the hearing.

16. Title 43 O.S. Supp.2003 § 110 provides in pertinent part:

... D. Upon granting a decree of dissolution of marriage, annulment of a marriage, or legal separation, the court may require either party to pay such reasonable expenses of the other as may be just and proper under the circumstances....

17. *King v. King,* 2005 OK 4, ¶ 30, 107 P.3d 570, *Larman v. Larman,* 1999 OK 83, ¶ 20, 991 P.2d 536, *as corrected* (1999); *Thielenhaus v. Thielenhaus,* 1995 OK 5, ¶ 19, 890 P.2d 925; *Harmon v. Harmon,* 1983 OK 89, ¶ 19, 770 P.2d 1; *Phillips v. Phillips,* 1976 OK 165, ¶ 10, 556 P.2d 607.