**Jeffery Lynn HOOG, Plaintiff in Error,**

**v.**

**Judy Kay HOOG, Defendant in Error.**

**No. 43344.**

Supreme Court of Oklahoma.

Oct. 28, 1969.

Bonds, Matthews & Mason, Muskogee, for plaintiff-appellant.

Tony Jack Lyons and Gary J. Dean, Pryor, Wesley Miller, Tahlequah, for defendant in error.

LAVENDER, Justice.

This is an appeal from an order of the trial court changing the custody of a child, who was then five years old, from his father, in whose custody the child was originally confided at the time of the divorce, to the child's mother. The father contends on appeal that the trial court failed to exercise its discretion in that it changed the custody of the child based purely on the provisions of 30 O.S.1961, Sec. 11 or, in the alternative, that if it exercised its discretion, the court abused the same because the evidence adduced was not sufficient to sustain the order. Plaintiff relies principally upon our 1968· opinion in

the case of Gibbons v. Gibbons, Okl., 442 P.2d 482.

The parties will be referred to as they appeared in the trial court. In that court Mr. Hoog, who is the plaintiff in error here, was the plaintiff and Mrs. Hoog (now Synar) was the defendant.

The parties were married in 1962. Of that marriage one child was born, namely, Steven Daniel Hoog. The custody of that child is what is in issue here. When Steven was two years old, his parents separated and he was left in the care of his father. Subsequently, Mr. Hoog, as the plaintiff, filed his petition in the district court in which he asked for a divorce from the defendant upon the grounds of incompatibility. He stated in his petition that Steven was then in his care and custody. He asked that the custody of the child be continued in him. There were no other particular grounds or reasons given at that time why the plaintiff should be awarded the custody rather than the defendant. To that petition the defendant filed her waiver and consent that the matter could be heard without further notice to her. On July 30, 1965, a decree was entered in which the custody of the boy was "confided to the plaintiff," with the proviso, "* * * that the defendant can have a reasonable right of visitation * * *."

Thereafter both the plaintiff and defendant remarried other persons. The defendant, who had married a man by the name of Synar, filed her first (of two) motions to modify the decree and to award her the custody of Steven on March 3, 1966. That motion alleged, among other things, that since the divorce she had remarried and that she and her second husband had acquired and were maintaining a comfortable, proper and fit home in which to rear Steven.

That motion came for hearing and although the record of the testimony is not in the record before us, certain comments made by the court, at the conclusion of that hearing, are in the record. In these comments the court expressed itself as

doubtful whether the evidence was sufficient to show a substantial change in circumstances which would indicate or warrant a change in the custody of the boy. The doubt of the trial court was whether the evidence demonstrated that the defendant had by that time overcome the immaturity and emotional instability with which she suffered at the time of the divorce. The trial court then pointed out that, while the defendant had apparently married a fine man in Mr. Synar, because of the difference in their respective ages the court wondered if the second marriage would work out, and he was therefore hesitant to disturb the boy's custody. The defendant's right of visitation was enlarged, however, to four days per month. The date of that order was February 20, 1967.

Thereafter, on July 10, 1968, the defendant filed her second motion to change Steven's custody to her. In this instrument she alleged that now Steven was five years old; that he would soon be ready for school; that a good school was close to her home in Tulsa. She also alleged that since the date of the court's last order, she had "further proved her maturity and stability." She alleged that she and her present husband had two children born of their marriage and that her home was happy and worthy. She also alleged that it would be for Steven's best interest to change his custody to his mother because there had been a deterioration in the relationship between the boy and his mother in that she had been forbidden to communicate with Steven by telephone or by letter even on the boy's birthday; that the plaintiff told her that if she wished to communicate with the boy, she would have to do it through him at his store. The plaintiff, by this time, had remarried and was operating a men's clothing store in Paris, Texas.

At the conclusion of this hearing, the trial court found:

"A. That the movant-mother, Judy Lynn Synar (formerly Hoog), has established a happy, well regulated home and a meaningful, happy marriage with her present husband, Stanley Synar.

"B. That the plaintiff-father Jeffery Lynn Hoog has prevented a proper communication between Steven Daniel Hoog and his movant-mother herein.

"C. That the present wife of Jeffery Lynn Hoog has been in poor health as a result of two miscarriages since the last hearing (20th day of February 1967) and is not yet fully recovered from her last miscarriage which occurred sometime in July, 1968, after a six (6) weeks pregnancy."

The plaintiff contends that the trial court erred in sustaining the defendant's motion for a change in custody because the evidence adduced at the hearing does not support the above findings of the trial court in that it does not meet the requirements set forth in the second paragraph of the Syllabus by the Court in the case of Gibbons v. Gibbons (1968), Okl., 442 P.2d 482.

Without quoting that syllabus paragraph word for word here, we think it sufficient to point out that the facts in that case and in this one are not sufficiently comparable so that the rule of that case may be said to be decisive here. In that case, as we pointed out in the body of the opinion, there was an absence of any evidence that the child there involved (a ten year old boy) would be substantially better off with respect to his mental, moral and temporal welfare if his custody were changed from his father to his mother. We remarked upon the trial court's comments in that case to the effect that there was no showing that the boy was receiving anything other than excellent care with his father. The relations between the father and the child's mother were cordial. The boy was encouraged by his father to have affection and respect for his mother. The trial court in that case ruled, however, and we held erroneously, that because of the provi-

sions of 30 O.S.1961, § 11 and particularly paragraph 2 of that section, he "had no choice" but to change the custody of a child of "tender" years from its father to its mother where it is shown that "all things are equal," meaning, apparently, that the child would be as well off with one parent as another. We held, in the Gibbons case, that the trial court is not bound by the provisions of that statute in matters involving a change in the custody of a child which had been earlier awarded to one parent but that the trial court must have before it evidence which demonstrates "* * * a permanent, material and substantial change in the circumstances or conditions of the parties, directly affecting the welfare of the child to a substantial or material extent, and (which make) it appear that, as a result of such change in conditions or circumstances, the child would be substantially better off, with respect to his temporal welfare and his mental and moral welfare, if the requested change in custody were ordered." The last is a quote, in part, of paragraph two of the Syllabus by the Court, Gibbons v. Gibbons, supra.

Summarizing then, we find upon a close reading of the opinion in the Gibbons case that the trial court failed to exercise any discretion but considered itself "bound" by the provisions of the cited statute, a determination which of itself would be cause to reverse the order in that case. We further noticed, however, that notwithstanding there was a showing that the child's mother in that case had remarried and apparently established a stable home environment in which the Gibbons boy would be well cared for, these changes in conditions or circumstances were not shown to be sufficient, under all of the circumstances of that case, to support a conclusion that the child would be substantially better off with respect to its temporal, mental or moral welfare if its custody was changed.

In this case there were a number of witnesses who testified to the effect that the defendant's present home is the kind of home generally thought to be suitable in which to rear children. There was considerable evidence—undisputed, as a matter of fact—that regardless of what the defendant's problems may have been earlier with regard to her emotional stability or maturity, she has overcome these difficulties and is a good mother and homemaker. There was further evidence that the boy has been drifting away from his mother in recent months. This is indicated by the evidence that the boy's mother was not permitted by the plaintiff to call the boy on his birthday, or upon other occasions for that matter; that the plaintiff told the defendant that if she wished to send the boy a birthday card she would have to first send it to him, the plaintiff, at his store and he would see that the boy received it. On other occasions, when the defendant would purchase clothes for the boy and send them to him, she testified, without contradiction, that they were returned unused with the tags still attached. The defendant testified that the boy had suddenly started calling her by her first name, rather than "mother" or "mommy," as she testified he had previously referred to her. The plaintiff testified that the boy now referred to his step-mother as "mother." There was also testimony that the plaintiff's present wife was too ill to come to the hearing and that, although her last miscarriage had occurred several months previously, she was, according to the plaintiff, still under the care of a doctor.

█ We have carefully reviewed the entire record before us and while we agree that there was no evidence adduced that the plaintiff was not also a fit and proper person to have the custody of his son, or that the plaintiff's home was anything other than a comfortable, stable, and entirely proper place in which to rear a youngster, we must, at the same time, as we have said in many other cases, consider the better position of the trial court who observes first hand the parties and their witnesses as they testify. There are many things which do not appear in the printed record, but which undoubtedly have their impact upon the determination of a question such

as existed here. We refer to the mannerisms of the parties; to their attitude toward the child, toward each other and to other people, all of which are bound to have an effect upon the sensitive awareness of a young and impressionable boy. We cannot say that the defendant failed to sustain the burden of proof required by Gibbons and cases of like import, nor can we say, under the circumstances, that the trial court abused its discretion in entering the order complained of. That order should be affirmed.

The plaintiff makes one other contention which we have not yet discussed. He contends that the trial court erred in not granting him a new trial upon the ground that the court reporter's notes of the February 20, 1967, hearing were unavailable and could not be included in the record on appeal. He argues that in the absence of that record there is insufficient basis for this court to compare the conditions which pre-existed the 1967 order with those prior to the order appealed from so that we cannot determine that a "change" of conditions or circumstances has occurred.

We notice that no offer was made in the trial court to introduce the record of the first hearing. In any event, we do not believe the plaintiff was prejudiced by his inability to incorporate into the record the evidence taken at the earlier hearing. The "comments" by the trial court, which do appear in the record on appeal, fairly demonstrates the reason why the trial court refused to grant the earlier change in custody. He was of the opinion at that time that it would be better to wait and see if the second marriage of the defendant was going to work out. When it was later demonstrated to the trial court that it had, the order under review here was entered. Whether the defendant had, previous to February 20, 1967, suffered from emotional or other personal difficulties, there was an abundance of evidence adduced at the second hearing to support the inherent finding of the trial court that these difficulties had been surmounted by defendant. Furthermore, the trial court was concerned, and properly so, only with whatever would be for the best interest of the boy as of October 30, 1968, the date of his order affecting the custody, and we are unable to see how, or in what respect, conditions which pre-existed February 20, 1967, would materially affect that question.

The trial court's order of October 30, 1968, placing the care, custody and control of Steven Daniel Hoog in his mother, and the trial court's order overruling the plaintiff's amended motion for a new trial, are affirmed.

IRWIN, C. J., BERRY, V. C. J. and DAVISON, WILLIAMS and JACKSON, JJ., concur.