**Linda Mary HORNBECK, now Armbruster, Appellant,**

**v.**

**R. Gene HORNBECK, Appellee.**

No. 61282.

Supreme Court of Oklahoma.

June 11, 1985.

Wyatt and Addicott, by Michael L. Addicott, Ada, for appellant.

Lyn E. Ables Law Offices, by Lyn E. Ables, Madill, for appellee.

LAVENDER, Justice:

This appeal is brought from an order of the trial court modifying the child custody provisions of a divorce decree.

Appellant mother and appellee father were granted a divorce when their son was seven months old. The divorce decree granted custody of the child to appellant with visitation to appellee on alternating weekends. Although appellant and child had moved from their Johnston County home to Tulsa, appellee never failed to exercise his visitation rights at every opportunity over the next year and a half.

Following the announcement of appellant's plan to remarry and move with the child to appellant's new husband's home near St. Louis, Missouri, appellee initiated the present action seeking a modification of the original custody provisions. Accompanying his motion to modify, appellant included a proposed plan for sharing custody.

The trial court held a hearing on the motion to modify at which counsel for both parties presented arguments and both parties testified extensively concerning the present and proposed arrangements. Additionally, the trial court accepted copious citations of legal and psychological authority concerning the effects of a shared custody situation on the interests of the child. At the close of the hearing the trial court took the matter under advisement for further study.

After its consideration of the matter, the trial court entered an order modifying the custody arrangements. The order followed the plan proposed by appellee, rotating custody of the child on a thirteen week basis. Each party would also have a one week visitation during the middle of the other party's quarterly custody. This order was to be effective until the child reached school age, at which time the custody arrangements were to be revised. The trial court provided for an additional review of the arrangements to be conducted after the order had been in force six months.

Appellant now challenges this order presenting three propositions of error.

I.

Appellant's initial argument concerns the effect of 12 O.S.Supp. 1983, § 1275.4 upon the case below. Appellant first asserts that, pursuant to section 1275.4, the trial court only has authority to enter a joint custody order in the initial custody determination. Secondly, appellant argues that the language of the statute indicates that a joint custody plan can only be implemented if approved by both parents. We reject both arguments.

The primary statement made by the Legislature in section 1275.4 is that the overriding consideration in structuring an award of custody is to determine what is in the best interests of the child involved. To

the end of furthering those interests the Legislature provided for implementation of joint custody agreements. It has been a guiding principle in our law that modifications of custody have as their underlying rationale the optimization of the child's best interests.[1] There would appear to be no basis to prohibit the consideration by the trial court, on a motion to modify, of a joint custody plan if that plan served the best interests of a child.

■ The second part of this proposition presents a separate question regarding the interpretation of this provision. The pertinent portions of section 1275.4 provide:

A. In awarding the custody of a minor unmarried child or in appointing a general guardian for said child, the court shall consider what appears to be in the best interests of the physical and mental and moral welfare of the child.

B. The court, pursuant to the provisions of subsection A of this section, may grant the care, custody, and control of a child to either parent or to the parents jointly.

For the purposes of this section, the terms joint custody and joint care, custody, and control mean the sharing by parents in all or some of the aspects of physical and legal care, custody, and control of their children.

C. If either or both parents have requested joint custody, said parents shall file with the court their plans for the exercise of joint care, custody and control of their child. The parents of the child may submit a plan jointly, or either parent or both parents may submit separate plans. Any plan shall include but is not limited to provisions detailing the physical living arrangements for the child, child support obligations, medical and dental care for the child, school placement, and visitation rights. A plan shall be accompanied by an affidavit signed by each parent stating that said parent agrees to the plan and will abide

by its terms. The plan and affidavit shall be filed with the petition for a divorce or legal separation or after said petition is filed.

Subsection B of this section clearly recognizes the trial court's power to grant custody jointly whenever such an arrangement is found to be in the best interests of the child. This comports with this Court's recognition of the same power in the trial court as stated in *Rice v. Rice*:[2]

Joint custody has been commonly employed in Oklahoma, and in other jurisdictions, to permit a child to be placed under the care and control of one parent during the school year and with the other parent during summer vacation. Although joint custody has been thought to be an anathema, new studies have proposed that it is preferable under certain conditions. The question of custody, joint or otherwise, must be decided by reference to the consequences for the particular child in each case. The primary contemplation must always be the welfare and best interests of the child. An award of joint child custody is a viable alternative for courts to consider when favorable circumstances are present so that it probably will work. (Footnotes omitted)

Appellant's argument on this point proposes that the provisions of subsection C, which requires the parents to file a plan for joint custody and require that each parent agree to abide by the proposed plan, puts a limitation on the trial court's authority to enter an award of joint custody. We do not agree with this assertion. Subsection C provides the procedure to be followed by two parents who have agreed in theory to seek a joint custody arrangement, although possibly disagreeing on the specific terms of that arrangement. Such a procedure would greatly simplify the trial court's task in such a situation. However, the existence of this procedure does not limit the trial court's power to consider the alterna-

1. See *Wells v. Wells,* 648 P.2d 1223 (Okla.1982); *Rice v. Rice,* 603 P.2d 1125 (Okla.1979); *Taylor v. Taylor,* 387 P.2d 648 (Okla.1963).

2. Supra, note 1, 603 P.2d 1125, 1129.

tive of joint custody when such an arrangement clearly furthers the best interests of a child, even though one parent has not agreed in principle. Such a result would in effect negate the provisions of subsection B which recognizes the power of the trial court to do whatever is in the best interests of the child involved. Such a result would not be permissible. The presumption must be indulged that every part of the statute has been intended to have effect.[3]

We thus conclude that the trial court had the power to consider and order a joint custody arrangement to serve the best interests of the parties' child at any time, regardless of whether or not appellant agreed to abide by the plan.[4] The order of the court binds appellant to the plan. Her consent to be bound was not necessary.

## II.

▉ Appellant's second proposition raises the question of whether her remarriage and subsequent relocation out of state would support a modification of custody. In the case of *Fletcher v. Fletcher*,[5] we stated:

> The record reflects a change of circumstances or conditions. The plaintiff has remarried and has moved with the children and her new husband from the State of Oklahoma and from the continental limits of the United States to Bermuda. For all practical purposes the defendant has been deprived of his right of visitation as provided in the divorce decree. This is not to say that such change of circumstances require the trial court to modify the divorce decree as to custody or child support. The changes and related circumstances are matters for the trial court to consider in determining

whether any modification is justified or required. No rigid formula exists by which to measure the nature of proof sufficient to justify a revision of the custody of the children. In arriving at any conclusion in the matter the trial court should consider whether such changed conditions affect the welfare of the children and what the children's best interests demand and giving due consideration to the rights of the parents. (Citations omitted)

The relocation of appellant, effectively depriving appellee of meaningful contact with the child, would thus constitute a change of condition sufficient to permit an inquiry by the trial court as to the effect of such a change on the child's best interest. This is the first level of the two stage burden of proof imposed by this Court in *Gibbons v. Gibbons*[6] on one moving for a change in custody provisions.

The trial court in this case found that the change in circumstances did detrimentally affect the best interests of the child. This effect arose from the consequent deprivation of the developing relationship between the child and appellee. The evidence before the trial court supported a finding that an excellent relationship did exist between both parents and the child and that the relationship between appellee and the child would suffer from a deprivation of contact. Additionally, the evidence supported the finding that the relationship was beneficial to the child.

## III.

The final proposition presented by appellant concerns the second stage of the *Gibbons* two stage burden of proof, i.e. whether the child would be substantially better

3. *Hunt v. Washington Fire & Marine Ins. Co.,* 381 P.2d 844 (Okla.1963).

4. See 12 O.S. 1981 § 1277, which provides in part:
   A petition or a cross petition for a divorce, legal separation, or annulment must state whether or not the parties have minor children of the marriage. If there are such children, the court shall make provision for

guardianship, custody, support and education of the minor children, and may modify or change any order in this respect, whenever circumstances render such change proper either before or after final judgment in the action.

5. 362 P.2d 691, 693 (Okla.1961).

6. 442 P.2d 482, 485 (Okla.1968).

off if the requested modification of custody were ordered. In this regard appellant argues that her evidence showed that she had established a stable new "family unit" and that the disruption of that stability would only have a detrimental effect upon the child. Appellee's counter-argument on this point is that the detriment from depriving the child of a beneficial relationship with either parent outweighs the benefit to be gained from a stable physical environment where only one parent is allowed to truly develop a relationship with the child. Appellee's argument is supported by recent studies indicating that the best alternative for a child in a post-divorce situation is to be able to maintain a *meaningful* relationship with *both* parents.[7]

Appellant's argument is founded upon the more traditional approach favored by courts in the past, which in turn still has its supporters, that the interest of the child is best served by seeking to establish physical stability for the child.[8] It has traditionally been felt that from this physical stability flows emotional stability, and that the maintenance of relationships with both parents is of lesser value. As with all theories regarding the development of the human psyche this theory too is subject to change as new information is gained.

We are now at the point where policy arguments both in favor of and opposed to joint custody arrangements may be presented to the trial court. Both sides may cite factors affecting the interests of the child. But the very existence of these conflicting viewpoints demonstrates the desirability of leaving the resolution of these matters in the sound discretion of the trial court to be decided on a case by case basis.

■ As appellant points out, the divorce itself produces the primary traumatic effect upon a child of a divorce. The questions before the trial court in the decisions affecting the custody of the child after this point are strictly limited to seeking the best interests of that child. Seeking to minimize the effects of the trauma of divorce and to heighten the child's chances for a happy and psychologically healthy childhood is clearly a path which the court may consider to advance those interests. We therefore conclude that where the factors affecting the child's welfare favor the allowance of a joint custody arrangement, which will further a meaningful relationship with both parents, this arrangement may be found to substantially advance the child's welfare.

■ However, even as pointed out by those in favor of a joint custody arrangement, joint custody should only be considered where certain circumstances are present. These circumstances boil down to the presence of factors showing the likelihood of parental cooperation in matters affecting the child, a capacity to provide equally beneficial home environments, and that the situation will not be unduly disruptive of other important aspects of the child's life, such as schooling.[9]

■ In the present case the evidence clearly indicates the positive presence of these factors. The parties had, up until the point of the modification proceedings, shown an ability and a desire to cooperate regarding the child. Even during the hearing they made it evident that they held the best interests of the child of primary concern, and that they would cooperate to advance those interests.

As to the quality of home life, both parties admitted that the other was capable of providing an excellent home environment for the child. Appellant, who was not employed outside the home, was available to be with the child throughout the day. Appellee, who is an attorney, also demonstrated that he could spend considerable periods

7. See e.g. M. Roman & W. Haddad, The Disposable Parent 48 (1978); see also Note, Divorce: The Joint Custody Alternative, 34 Okla.L.Rev. 119 (1981); Recent Developments, Joint Custody: The Best Interests of The Child, 18 Tulsa L.J. 159 (1982).

8. See *Spencer v. Spencer*, 567 P.2d 112 (Okla. App.1977) (footnote 1).

9. See *Rice v. Rice*, 603 P.2d at 1129 (footnote 9).

of time with the child, and that when he could not, the child would have the care and companionship of his paternal grandfather, a man of sixty-five and in excellent health.[10]

Joint custody in the present case avoids the disruption of other institutionalized aspects of socialization through the fact that the child is now too young to be taking an active part in such programs. The trial court further provided that the entire custody scheme would be reconsidered at the point at which the child was to begin such programs.

Upon review it appears that the evidence clearly supports the trial court's exercise of discretion in this case. A custody scheme was fashioned and ordered implemented which allows the child to fully develop relationships with both of his parents while at a young and impressionable stage. The order is also supported by evidence showing that the development of such relationships is to the benefit of the child. Those factors which might normally contraindicate joint custody also appear not to be present.

The trial court's order is supported by the clear weight of the evidence and thus cannot be disturbed on review. Accordingly, the order establishing joint custody of the minor child is affirmed.[11]

DOOLIN, V.C.J., and OPALA, WILSON, KAUGER and SUMMERS, JJ., concur.

SIMMS, C.J., and HODGES and HARGRAVE, JJ., dissent.

SIMMS, Chief Justice, dissenting:

I respectfully dissent. I do not believe the evidence in this case was sufficient under the guidelines of *Gibbons v. Gibbons*, Okl., 442 P.2d 482 (1968) to justify modifying the custody order. Also, I agree with appellant that proper application of 12 O.S.Supp.1983, § 1275.4 is wholly dependent on the consent and agreement of both parents to the concept of joint custody, although not necessarily to each specific term, and that the statute is intended to be used only in the initial award of custody.

Under *Gibbons*, supra, a custody order entered in the divorce decree may not be modified unless movant makes a showing of a permanent, material substantial change in the circumstances or conditions of the parties, which directly affects the welfare of the child to a substantial or material extent, and as a result of which it appears that the child would be substantially better off, with respect to its temporal welfare and its mental and moral welfare, if the requested change in custody were ordered.

Here the mother's move to Missouri was not shown to be such a permanent, material and substantial change directly affecting the welfare of the child which would enable the movant to justify modification under *Gibbons*. Reliance on *Fletcher v. Fletcher*, Okl., 362 P.2d 691 (1961), does not support the majority's position. Obviously Missouri is much closer to Oklahoma than Bermuda, but much more importantly, *Fletcher* is a pre-*Gibbons* decision, and is not useful as to changes of condition now required to support a motion to modify.

During the early portion of this hearing the trial judge recognized this problem, mentioning that while he was convinced that appellee had established enough to increase visitation, he was not sure that the facts would support a modification of the original custody decree. In my opinion, the trial court's initial assessment was correct. The evidence did warrant an increase in appellee's visitation rights and supported restructuring those rights, but did not justify any modification of custody.

The award of custody in a divorce matter is clearly a decision addressed to the exer-

---

**10.** Compare the present situation to that in *Gordon v. Gordon*, 577 P.2d 1271 (Okla.1978), where the father requesting initial custody testified he would have to leave the child in the custody of a housekeeper approximately 90 percent of its waking hours, and this Court reversed the trial court's grant of custody to the father.

**11.** *Carpenter v. Carpenter*, 645 P.2d 476 (Okla. 1982).

cise of the trial court's sound discretion. The notion of more equal sharing of physical custody of children did not originate with this new statute. Our trial courts have, and have always had, the power to establish custody in the manner which seems to be in the child's best interest. That power has included the authority to award custody on a split or alternate basis; in other words, alternating physical custody between parents for more or less equal periodic intervals. See for instance, *Rice v. Rice*, Okl., 603 P.2d 1125 (1979); *Gilbert v. Gilbert*, Okl., 460 P.2d 929 (1969); *Conrad v. Conrad*, Okl., 443 P.2d 110 (1968); "Split, divided, or alternate custody of children," 92 ALR2d 696 (1963).

Our "joint" custody statute envisions by its very terms, something different from mere physical custody shifting over periodic intervals, however. The "legal" custody awarded under the statute does not shift with physical custody but remains with each parent even in the absence of physical custody. Each aspect of "legal" custody is shared by each parent regardless of the physical custody at any particular time. This is a new concept in our custody law. See, "Joint Custody of Children," 17 ALR 4th 1013. The extent of these differences has not been explored yet by this Court for this is the first decision we have reached under the new statute.

In my opinion, the trial court abused his discretion by modifying the custody award as the requisites of *Gibbons* were not met by the evidence. It was additional error to apply 12 O.S.Supp.1983, § 1275.4, as this was not an initial award of custody, and the mother did not agree to the imposition of an award of joint custody.