2015 OK CIV APP 58

**In re the MARRIAGE OF Joseph BILYEU, Petitioner/Appellee,**

v.

**Shyla BILYEU, Respondent/Appellant.**

**No. 112,300.**

Court of Civil Appeals of Oklahoma, Division No. 4.

May 14, 2015.

Suzanne Woodrow–Snell, Woodrow–Snell Law Office, Purcell, Oklahoma, and Betsy Ann Brown, Norman, Oklahoma, for Petitioner/Appellee.

Ann K. Hadrava, Hadrava Law Firm, P.L.L.C., Oklahoma City, Oklahoma, for Respondent/Appellant.

P. THOMAS THORNBRUGH, Judge.

¶1 Shyla Bilyeu (Mother) appeals a divorce decree awarding primary physical custody to Joseph Bilyeu (Father) with joint custody. On review, we find that the district court did not abuse its discretion in decreeing joint custody. We affirm.

## BACKGROUND

¶2 The parties were married in 2006. Father filed for divorce in June 2011. They have two minor children, aged nine and five at the time of the decree. Father requested joint custody "unless it was untenable," and Mother requested sole custody. The district court held trial for approximately five days on the issues, and made the following findings/orders as part of the decree:

13. **Joint Custody**—In the above styled cause of action the Petitioner [Father] has pled for joint custody. The court finds that both parents are fit custodians for the minor children; the parties are able to cooperate with each other the majority of the time concerning the children. The minor children are well cared for when in the custody of either parent and it is patently evident that each parent deeply cares for these children. The parties do not live far apart from each other. The physical environments of the two homes of the parties are not extremely different. This Court believes the parties have a current and functional joint custody plan and the visitation schedule is adopted. The Court further states the belief that conflict between the parties has arisen over lack of specificity with the Plan and therefore adopts the Cleveland County Standard Visitation Plan regarding holidays, school breaks, and summer visitation. The Court hereby vests the parties with joint custody of the minor children.

14. **Primary Custodian**—The Petitioner is hereby deemed to be the primary custodian of the minor children. The primary custodian has the final decision making authority in matters regarding the children such as what school the children attend, medical providers and extracurricular [sic]. The Petitioner shall only exercise his final decision making authority after reasonable discussions with Respondent and due consideration of her input and goals for the minor children as to the issue being considered. The minor children have more stability in their lives; far greater familial, friends, extracurricular and school contacts with Dibble area with the Petitioner than that of the Respondent's home. There is a greater support group in their current location from both the paternal and maternal sides of the failed marriage.

Mother now appeals this custody decision, arguing that awarding joint custody was an abuse of discretion, and requesting that she be awarded sole custody.

## STANDARD OF REVIEW

¶ 3 Custody contests are of equitable cognizance, and although an appellate court may examine and weigh the evidence, the findings and decree of the trial court cannot be disturbed unless found to be against the clear weight of the evidence or an abuse of discretion. *Manhart v. Manhart*, 1986 OK 12, ¶ 14, 725 P.2d 1234 (weight of the evidence); *Davis v. Davis*, 1960 OK 196, ¶ 0, 355 P.2d 572 (Syllabus 1) (abuse of discretion). This formulation, although commonly cited, becomes problematical if it is interpreted as stating *two different* decisional standards.

¶ 4 An *abuse of discretion* occurs when a decision is based on an erroneous conclusion of law or where there is no rational basis in evidence for the ruling. *Spencer v. Okla. Gas & Elec. Co.*, 2007 OK 76, ¶ 13, 171 P.3d 890. We find no generally accepted definition of the "clear weight of the evidence." It has further become a familiar form of decision for the appellate courts to find that a domestic decision was **"neither** against the clear weight of the evidence **nor** an abuse of discretion" implying that the two standards are in some way different, and have separate elements that must be met.[1]

¶ 5 However, in *Williamson v. Williamson*, 2005 OK 6, ¶ 5, 107 P.3d 589, the Supreme Court noted in a custody case that "unless we determine that the trial court's decision is clearly against the weight of the evidence *so as to constitute an abuse of discretion,* it will not be disturbed" (emphasis added). This principle was previously stated in *Miles v. Young*, 1991 OK CIV APP 101, ¶ 29, 818 P.2d 1258 (citing *Gorham v. Gorham*, 1984 OK 90, 692 P.2d 1375): "In an action of equitable cognizance, such as this, we will weigh the evidence, but will not disturb the trial court's judgment in the absence of abuse of discretion." Hence we conclude that the "clear weight of the evidence" inquiry is part of the abuse of discretion standard, and the generally accepted definition of an abuse of discretion applies in custody cases. In custody cases, we will ordinarily give def-

erence to the trial court, who observes the demeanor of the witnesses. *See Fast v. Fast,* 1989 OK CIV APP 31, 787 P.2d 1288; *Miles v. Young,* 1991 OK CIV APP 101, 818 P.2d 1258; *Kilpatrick v. Kilpatrick,* 2008 OK CIV APP 94, 198 P.3d 406.

## ANALYSIS

¶ 6 Mother raises the following allegations of error and pleas for relief:

1. The trial court erred as a matter of law in awarding the parties joint custody of the children given Mother's opposition and the weight of the evidence showing immense hostility between the parties and their inability to communicate, set aside differences, or engage in any joint decision-making for the best interests of the children.

2. The District Court erred in failing to award sole custody to Mother and by designating Father primary custodian given the weight of the evidence of Father's misconduct throughout the proceedings and evidence showing Mother was best able to provide a stable environment mentally, physically, and financially for the children, she was primarily involved in their daily activities, and tended to the children's medical and education needs.

3. The District Court showed arbitrariness and prejudice toward Mother and undue bias toward Father by its decisions such that a remand to that court for any part of this determination would be fundamentally unjust to Mother. Therefore, Mother requests this equitable Court to exercise its powers to render such judgment which the trial court should have by (1) reversing the joint custody award and (2) awarding sole custody to Mother based on the evidence before this Court.

### I. HOSTILITY, COOPERATION AND JOINT CUSTODY

¶ 7 There are numerous statements by the Supreme Court and Court of Civil

---

1. *See, e.g., Herrera v. Herrera,* 2013 OK CIV APP 25, ¶ 19, 298 P.3d 1209; *In re Adoption of M.C.D.,* 2002 OK CIV APP 27, ¶ 27, 42 P.3d 873.

Appeals on this subject, and harmonizing them all is difficult. It is made more difficult by the fact that much of this case law involves modification of joint custody *post-decree*, after the joint arrangement had been tested, away from the immediate stress and hostility of a custody trial, and found unworkable, rather than according to the standards for an initial custody determination.

¶ 8 The lodestar by which a trial court must judge a custody contest is *the best interests of the child.* We emphasize this language because this Court has periodically observed divorce appeals based on the argument that a court is legally barred by Supreme Court precedent from initially awarding joint custody solely because the parents are hostile to each other.

¶ 9 These arguments are often based on "modification" cases, such as *Foshee v. Foshee,* 2010 OK 85, 247 P.3d 1162, wherein the Supreme Court noted: "When it becomes apparent to the court that joint custody is not working and it is not serving the child's best interest, then a material and substantial change of circumstance has occurred and the joint custody arrangement must be vacated." *Id.,* ¶ 15. We do not read *Foshee* as indicating that mere conflict or personal dislike alone mandates that a court award sole custody. Only when the situation between the parents has become so bad that the child would be better off without input from both parents regarding important life decisions is sole custody required.

¶ 10 We find it clear that some degree of opposition to joint custody by one party does not alone render an initial joint custody decision an automatic abuse of discretion. *Hornbeck v. Hornbeck,* 1985 OK 48, 702 P.2d 42, is clear that the trial court's power to consider the alternative of joint custody when such an arrangement clearly

furthers the best interests of a child is not entirely removed because one parent does not wish for joint custody.[2] This view is consistent with *Foshee,* and with 43 O.S.2011 § 109(C).[3] The case of *Rice v. Rice,* 1979 OK 161, 603 P.2d 1125, notes, "The question of custody, joint or otherwise, must be decided by reference to the consequences for the particular child in each case." *Id.,* ¶ 10. "The primary contemplation must always be the welfare and best interests of the child." *Id.* These cases indicate that the decisional factor is not *the immediate quality of the parents' relationship, but the long-term effect that the relationship may have on a child in a joint custody situation.*

¶ 11 However, *Hornbeck* also states that certain circumstances are necessary for joint custody: "These circumstances boil down to the presence of factors showing the likelihood of parental cooperation in matters affecting the child...." 1985 OK 48, ¶ 19, 702 P.2d 42. Certain decisions of the Court of Civil Appeals have gone further, implying that joint custody is automatically an abuse of discretion if one party opposes it. *See, e.g., Dunham v. Dunham,* 1989 OK CIV APP 44, 777 P.2d 403; *Anderson v. Anderson,* 1990 OK CIV APP 23, 791 P.2d 116. However, the Supreme Court does not appear to have adopted this view. Rather, it appears to have stated a somewhat flexible standard rather than drawing a bright line, invoking the best interest of the child as a primary concern, but noting that joint custody requires some degree of cooperation.

¶ 12 Trial judges are traditionally given wide latitude in custody decisions. The Supreme Court has consistently noted in many other cases that we should "consider the better position of the trial court who observes first hand the parties and their witnesses as they testify." *Hoog v. Hoog,* 1969 OK 174, ¶ 12, 460 P.2d 946. "There are

2. "However, the existence of [a procedure requiring that each parent agree to abide by the proposed plan] does not limit the trial court's power to consider the alternative of joint custody when such an arrangement clearly furthers the best interests of a child, even though one parent has not agreed in principle. Such a result would in effect negate the provisions of subsection B which recognizes the power of the trial court to

do whatever is in the best interests of the child involved." *Hornbeck,* ¶ 10.

3. The statute states, "If either or both parents have requested joint custody, said parents shall file with the court their plans for the exercise of joint care, custody, and control of their child." If both parties *must* desire joint custody, the statute would require a joint application.

many things which do not appear in the printed record, but which undoubtedly have their impact upon the determination of a question...." *Id.* "We refer to the mannerisms of the parties; to their attitude toward the child, toward each other and to other people...." *Id.* A rigid rule forbidding joint custody in stated circumstances is contrary to this established tradition, and to 43 O.S. 2011 § 109. Further, a rule that all that is needed to destroy a joint custody arrangement is a deliberate decision not to cooperate creates an incentive for a party who wants sole custody to obstruct peaceful cooperation, *even if peaceful joint custody would be in the best interests of the child.*

¶ 13 The trial court in this case noted some hostility between the parents, but expressed a belief that this could be overcome if the parties were given more precise instruction and removed from the immediate stress and hostility of a custody battle. We do not find that the court was barred, as a matter of law, from ordering joint custody, with Father as primary physical custodian, by the parties' lapses in common courtesy or outbursts of hostility.

## II. FATHER'S ALLEGED MIS- CONDUCT THROUGHOUT THE PROCEEDINGS

■ ¶ 14 The district court vested primary physical custody in Father. Mother complains of numerous acts by Father that she argues render Father unfit for custody, including alleged "misconduct" during the proceedings. The record shows that Mother filed seven applications for contempt citations during the proceedings, requesting in each case that Father, the primary custodial parent, be sentenced to six months in jail.[4] The court appears to have granted only one of these, and imposed no jail time. The court noted both Father's apparent "derogation of agreed court orders," and Mother's apparent "demand for strict adherence to the letter thereof without regard to the need for rea-

sonable alterations due to illness or changing circumstances." The record demonstrates both that Father can be impulsive, quick to anger, and speak intemperately, and that Mother and her new "significant other" sometimes attempt to strategically provoke that anger.[5]

■ ¶ 15 "The trial court should [neither] award nor change custody of a child to punish one parent for contemptuous conduct; the court, however, may consider such conduct in determining the welfare of the child." *Young v. Young,* 1963 OK 14, ¶ 19, 383 P.2d 211. As noted by *Gorham v. Gorham,* 1984 OK 90, ¶¶ 13–14, 692 P.2d 1375 (footnotes omitted):

While the moral transgressions of the parties are to be considered in the trial court's determination of what is in the best interest of the child in a custody determination, the best interests of the child are of paramount concern....

.... The determinative factor in this case, as in all such cases, must be the effect of the questioned behavior on the welfare of the child. To establish an abuse of the trial court's discretion, there must be a showing that this requisite nexus is present and that the effect of the behavior is detrimental to the best interests of the child.

■ ¶ 16 The trial court found that both parents are fit custodians for the minor children and that the parties are able to cooperate with each other the **majority of the time** concerning the children. It further found that "the minor children are well cared for when in the custody of either parent and it is patently evident that each parent deeply cares for these children." "The trial court is confronted with the parties themselves and the witnesses," and is in a much better position to assess the credibility of those witnesses than is this Court from "the dry, printed words appearing in the record."

---

4. Mother filed contempt citations on August 31, 2011; September 16, 2011: December 21, 2011; January 19, 2012; April 9, 2012; December 26, 2012, and February 6, 2013.

5. For example, see record at p. 231 where the court details attempts by Mother's new "significant other" to agitate Father by "blowing kisses" during trial. The court clearly found this behavior disturbing enough to note and condemn it in its written ruling on dissolution.

*Perry v. Perry,* 1965 OK 160, ¶ 5, 408 P.2d 285. We find nothing in the record that could cause us to doubt these findings or require us to substitute our own judgment for that of the trial judge. We do not concur with Mother's argument that the trial court failed to properly consider Father's alleged "misconduct throughout the proceedings"

## III. ALLEGED ARBITRARINESS AND PREJUDICE AGAINST MOTHER AND UNDUE BIAS TOWARD FATHER

¶ 17 Due process entitles a person to an impartial and disinterested tribunal in both civil and criminal cases. "Every litigant is entitled to nothing less than the cold neutrality of an impartial judge." *Miller Dollarhide, P.C. v. Tal,* 2007 OK 58, ¶ 16, 163 P.3d 548. "[T]his Court has the power to correct the error in refusing to disqualify, even as late as on the appeal, and will use that power if necessary to promote justice or insure popular respect for the courts." *Casey v. Casey,* 2011 OK 46, ¶ 14, 270 P.3d 109. **However we find no request that the judge in this case disqualify,** and no particular facts of this case indicating the trial judge was obligated to recuse himself. Our impression of the written record is that of a judge attempting to act impartially between the adversarial demands of two aggressive and competent counsel and two frustrated parents. We find no evidence of the improper bias claimed by Mother.

## IV. BEST INTERESTS

¶ 18 The district court found that that "both parents are fit custodians for the minor children"; that "the minor children are well cared for when in the custody of either parent"; and that "it is patently evident that each parent deeply cares for these children." Overall, the court found that physical custody by Father was in the children's best interests, stating, "The minor children have more stability in their lives; far greater familial, friends, extracurricular and school

contacts with Dibble area with the Petitioner than that of the Respondent's home. There is a greater support group in their current location from both the paternal and maternal sides of the failed marriage." Contrary to Mother's brief, the court clearly did not base its decisions solely on these geographic factors, but made a careful assessment of the numerous allegations and arguments presented over five days of trial. We find the court's custody decision to be within the range of discretion granted to a trial judge in such matters. We therefore affirm its order.

## CONCLUSION

¶ 19 We note especially that much of the case law on this issue involves motions to change custody arrangements based on a material change of circumstances post-decree. It is inherent in that scenario that joint custody has been tested in a situation free of the stresses and adversarial posture created by a custody contest and still found to be against a child's best interests. The record shows some hostility and a refusal to cooperate between the parents at the time of the divorce. It also shows, as the trial court found, that "it is patently evident that each parent deeply cares for these children." It does not show that they are incapable of overcoming this hostility in the longer term and acting in the best interests of their children. If the latter eventually proves to be the case, the established modification process is open to the parties. We therefore affirm the decision of the district court.

¶ 20 **AFFIRMED.**

RAPP, P.J., and BARNES, J., concur.