OSCN Found Document:BILYEU v. BILYEU

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 BILYEU v. BILYEU
2015 OK CIV APP 58
352 P.3d 56
Case Number: 112300
Decided: 05/14/2015
Mandate Issued: 06/10/2015
DIVISION IV
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION IV
Cite as: 2015 OK CIV APP 58, 352 P.3d 56

 

IN RE THE MARRIAGE OF:

JOSEPH BILYEU, Petitioner/Appellee,
v.
SHYLA BILYEU, 
Respondent/Appellant.

APPEAL FROM THE DISTRICT COURT OF
MCCLAIN COUNTY, 
OKLAHOMA
HONORABLE CHARLES GRAY, TRIAL JUDGE

AFFIRMED

Suzanne Woodrow-Snell, WOODROW-SNELL LAW OFFICE, Purcell, Oklahoma, and Betsy 
Ann Brown, Norman, Oklahoma, for Petitioner/Appellee
Ann K. Hadrava, HADRAVA 
LAW FIRM, P.L.L.C., Oklahoma City, Oklahoma, for Respondent/Appellant


P. THOMAS THORNBRUGH, JUDGE:
¶1 Shyla Bilyeu (Mother) appeals a divorce decree awarding primary physical 
custody to Joseph Bilyeu (Father) with joint custody. On review, we find that 
the district court did not abuse its discretion in decreeing joint custody. We 
affirm.
BACKGROUND
¶2 The parties were married in 2006. Father filed for divorce in June 2011. 
They have two minor children, aged nine and five at the time of the decree. 
Father requested joint custody "unless it was untenable," and Mother requested 
sole custody. The district court held trial for approximately five days on the 
issues, and made the following findings/orders as part of the decree:

 
 13. Joint Custody - In the above styled cause of action the 
 Petitioner [Father] has pled for joint custody. The court finds that both 
 parents are fit custodians for the minor children; the parties are able to 
 cooperate with each other the majority of the time concerning the children. 
 The minor children are well cared for when in the custody of either parent 
 and it is patently evident that each parent deeply cares for these children. 
 The parties do not live far apart from each other. The physical environments 
 of the two homes of the parties are not extremely different. This Court 
 believes the parties have a current and functional joint custody plan and 
 the visitation schedule is adopted. The Court further states the belief that 
 conflict between the parties has arisen over lack of specificity with the 
 Plan and therefore adopts the Cleveland County Standard Visitation Plan 
 regarding holidays, school breaks, and summer visitation. The Court hereby 
 vests the parties with joint custody of the minor children.
 14. Primary Custodian - The Petitioner is hereby deemed to be the 
 primary custodian of the minor children. The primary custodian has the final 
 decision making authority in matters regarding the children such as what 
 school the children attend, medical providers and extracurricular [sic]. The 
 Petitioner shall only exercise his final decision making authority after 
 reasonable discussions with Respondent and due consideration of her input 
 and goals for the minor children as to the issue being considered. The minor 
 children have more stability in their lives; far greater familial, friends, 
 extracurricular and school contacts with Dibble area with the Petitioner 
 than that of the Respondent's home. There is a greater support group in 
 their current location from both the paternal and maternal sides of the 
 failed marriage.
Mother now appeals this custody decision, arguing that awarding joint custody 
was an abuse of discretion, and requesting that she be awarded sole custody.
STANDARD OF REVIEW
¶3 Custody contests are of equitable cognizance, and although an appellate 
court may examine and weigh the evidence, the findings and decree of the trial 
court cannot be disturbed unless found to be against the clear weight of the 
evidence or an abuse of discretion. Manhart v. Manhart, 1986 OK 12, ¶ 14, 725 P.2d 1234 (weight of the 
evidence); Davis v. Davis, 1960 OK 196, ¶ 0, 355 P.2d 572 (Syllabus 1) (abuse of 
discretion). This formulation, although commonly cited, becomes problematical if 
it is interpreted as stating two different decisional standards.
¶4 An abuse of discretion occurs when a decision is based on an 
erroneous conclusion of law or where there is no rational basis in evidence for 
the ruling. Spencer v. Okla. Gas & Elec. Co., 2007 OK 76, ¶ 13, 171 P.3d 890. We find no generally 
accepted definition of the "clear weight of the evidence." It has further become 
a familiar form of decision for the appellate courts to find that a domestic 
decision was "neither against the clear weight of the evidence nor 
an abuse of discretion" implying that the two standards are in some way 
different, and have separate elements that must be met.[1]
¶5 However, in Williamson v. Williamson, 2005 OK 6, ¶ 5, 107 P.3d 589, the Supreme Court 
noted in a custody case that "unless we determine that the trial court's 
decision is clearly against the weight of the evidence so as to constitute an 
abuse of discretion, it will not be disturbed" (emphasis added). This 
principle was previously stated in Miles v. Young, 1991 OK CIV APP 101, ¶ 29, 818 P.2d 1258 (citing Gorham v. 
Gorham, 1984 OK 90, 692 P.2d 1375): "In an action of 
equitable cognizance, such as this, we will weigh the evidence, but will not 
disturb the trial court's judgment in the absence of abuse of discretion." Hence 
we conclude that the "clear weight of the evidence" inquiry is part of the abuse 
of discretion standard, and the generally accepted definition of an abuse of 
discretion applies in custody cases. In custody cases, we will ordinarily give 
deference to the trial court, who observes the demeanor of the witnesses. See 
Fast v. Fast, 1989 OK CIV APP 
31, 787 P.2d 1288; Miles 
v. Young, 1991 OK CIV APP 
101, 818 P.2d 1258; 
Kilpatrick v. Kilpatrick, 2008 OK CIV APP 94, 198 P.3d 406.
ANALYSIS
¶6 Mother raises the following allegations of error and pleas for relief:

 
 1. The trial court erred as a matter of law in awarding the parties joint 
 custody of the children given Mother's opposition and the weight of the 
 evidence showing immense hostility between the parties and their inability 
 to communicate, set aside differences, or engage in any joint 
 decision-making for the best interests of the children.
 2. The District Court erred in failing to award sole custody to Mother 
 and by designating Father primary custodian given the weight of the evidence 
 of Father's misconduct throughout the proceedings and evidence showing 
 Mother was best able to provide a stable environment mentally, physically, 
 and financially for the children, she was primarily involved in their daily 
 activities, and tended to the children's medical and education needs.
 3. The District Court showed arbitrariness and prejudice toward Mother 
 and undue bias toward Father by its decisions such that a remand to that 
 court for any part of this determination would be fundamentally unjust to 
 Mother. Therefore, Mother requests this equitable Court to exercise its 
 powers to render such judgment which the trial court should have by (1) 
 reversing the joint custody award and (2) awarding sole custody to Mother 
 based on the evidence before this Court.
I. HOSTILITY, COOPERATION AND JOINT CUSTODY
¶7 There are numerous statements by the Supreme Court and Court of Civil 
Appeals on this subject, and harmonizing them all is difficult. It is made more 
difficult by the fact that much of this case law involves modification of joint 
custody post-decree, after the joint arrangement had been tested, away 
from the immediate stress and hostility of a custody trial, and found 
unworkable, rather than according to the standards for an initial custody 
determination.
¶8 The lodestar by which a trial court must judge a custody contest is the 
best interests of the child. We emphasize this language because this Court 
has periodically observed divorce appeals based on the argument that a court is 
legally barred by Supreme Court precedent from initially awarding joint custody 
solely because the parents are hostile to each other.
¶9 These arguments are often based on "modification" cases, such as Foshee 
v. Foshee, 2010 OK 85, 247 P.3d 1162, wherein the Supreme 
Court noted: "When it becomes apparent to the court that joint custody is not 
working and it is not serving the child's best interest, then a material and 
substantial change of circumstance has occurred and the joint custody 
arrangement must be vacated." Id., ¶ 15. We do not read Foshee 
as indicating that mere conflict or personal dislike alone mandates that a 
court award sole custody. Only when the situation between the parents has become 
so bad that the child would be better off without input from both parents 
regarding important life decisions is sole custody required.
¶10 We find it clear that some degree of opposition to joint custody by one 
party does not alone render an initial joint custody decision an automatic abuse 
of discretion. Hornbeck v. Hornbeck, 1985 OK 48, 702 P.2d 42, is clear that the trial 
court's power to consider the alternative of joint custody when such an 
arrangement clearly furthers the best interests of a child is not entirely 
removed because one parent does not wish for joint custody.[2] This view is consistent with 
Foshee, and with 43 O.S. 2011 
§ 109(c).[3] 
The case of Rice v. Rice, 1979 
OK 161, 603 P.2d 1125, notes, 
"The question of custody, joint or otherwise, must be decided by reference to 
the consequences for the particular child in each case." Id., ¶ 10. "The 
primary contemplation must always be the welfare and best interests of the 
child." Id. These cases indicate that the decisional factor is not the 
immediate quality of the parents' relationship, but the long-term 
effect that the relationship may have on a child in a joint custody 
situation. 
¶11 However, Hornbeck also states that certain circumstances are 
necessary for joint custody: "These circumstances boil down to the presence of 
factors showing the likelihood of parental cooperation in matters affecting the 
child . . . ." 1985 OK 48, ¶ 19. 
Certain decisions of the Court of Civil Appeals have gone further, implying that 
joint custody is automatically an abuse of discretion if one party opposes it. 
See, e.g., Dunham v. Dunham, 1989 OK CIV APP 44, 777 P.2d 403; Anderson v. 
Anderson, 1990 OK CIV APP 23, 
791 P.2d 116. However, the 
Supreme Court does not appear to have adopted this view. Rather, it appears to 
have stated a somewhat flexible standard rather than drawing a bright line, 
invoking the best interest of the child as a primary concern, but noting that 
joint custody requires some degree of cooperation.
¶12 Trial judges are traditionally given wide latitude in custody decisions. 
The Supreme Court has consistently noted in many other cases that we should 
"consider the better position of the trial court who observes first hand the 
parties and their witnesses as they testify." Hoog v. Hoog, 1969 OK 174, ¶ 12, 460 P.2d 46. 
"There are many things which do not appear in the printed record, but which 
undoubtedly have their impact upon the determination of a question . . . ." 
Id. "We refer to the mannerisms of the parties; to their attitude toward 
the child, toward each other and to other people . . . ." Id. A rigid 
rule forbidding joint custody in stated circumstances is contrary to this 
established tradition, and to 43 O.S. 
2011 § 109. Further, a rule that all that is needed to destroy a joint 
custody arrangement is a deliberate decision not to cooperate creates an 
incentive for a party who wants sole custody to obstruct peaceful cooperation, 
even if peaceful joint custody would be in the best interests of the child. 

¶13 The trial court in this case noted some hostility between the parents, 
but expressed a belief that this could be overcome if the parties were given 
more precise instruction and removed from the immediate stress and hostility of 
a custody battle. We do not find that the court was barred, as a matter of law, 
from ordering joint custody, with Father as primary physical custodian, by the 
parties' lapses in common courtesy or outbursts of hostility.
II. FATHER'S ALLEGED MISCONDUCT THROUGHOUT THE PROCEEDINGS
¶14 The district court vested primary physical custody in Father. Mother 
complains of numerous acts by Father that she argues render Father unfit for 
custody, including alleged "misconduct" during the proceedings. The record shows 
that Mother filed seven applications for contempt citations during the 
proceedings, requesting in each case that Father, the primary custodial parent, 
be sentenced to six months in jail.[4] The court appears to have granted only one of these, 
and imposed no jail time. The court noted both Father's apparent "derogation of 
agreed court orders," and Mother's apparent "demand for strict adherence to the 
letter thereof without regard to the need for reasonable alterations due to 
illness or changing circumstances." The record demonstrates both that Father can 
be impulsive, quick to anger, and speak intemperately, and that Mother and her 
new "significant other" sometimes attempt to strategically provoke that anger.[5]
¶15 "The trial court should [neither] award nor change custody of a child to 
punish one parent for contemptuous conduct; the court, however, may consider 
such conduct in determining the welfare of the child." Young v. Young, 1963 OK 14, ¶ 19, 383 P.2d 211. As noted by Gorham 
v. Gorham, 1984 OK 90, ¶¶ 
13-14, 692 P.2d 1375 (footnotes 
omitted):

 
 While the moral transgressions of the parties are to be considered in the 
 trial court's determination of what is in the best interest of the child in 
 a custody determination, the best interests of the child are of paramount 
 concern. . . .
 . . . . The determinative factor in this case, as in all such cases, must 
 be the effect of the questioned behavior on the welfare of the child. To 
 establish an abuse of the trial court's discretion, there must be a showing 
 that this requisite nexus is present and that the effect of the behavior is 
 detrimental to the best interests of the child.
¶16 The trial court found that both parents are fit custodians for the minor 
children and that the parties are able to cooperate with each other the 
majority of the time concerning the children. It further found that "the 
minor children are well cared for when in the custody of either parent and it is 
patently evident that each parent deeply cares for these children." "The trial 
court is confronted with the parties themselves and the witnesses," and is in a 
much better position to assess the credibility of those witnesses than is this 
Court from "the dry, printed words appearing in the record." Perry v. 
Perry, 1965 OK 160, ¶ 5, 408 P.2d 285. We find nothing in the 
record that could cause us to doubt these findings or require us to substitute 
our own judgment for that of the trial judge. We do not concur with Mother's 
argument that the trial court failed to properly consider Father's alleged 
"misconduct throughout the proceedings"
III. ALLEGED ARBITRARINESS AND PREJUDICE AGAINST MOTHER AND 
UNDUE BIAS TOWARD FATHER
¶17 Due process entitles a person to an impartial and disinterested tribunal 
in both civil and criminal cases. "Every litigant is entitled to nothing less 
than the cold neutrality of an impartial judge." Miller Dollarhide, P.C. v. 
Tal, 2007 OK 58, ¶ 16, 163 P.3d 548. "[T]his Court has the 
power to correct the error in refusing to disqualify, even as late as on the 
appeal, and will use that power if necessary to promote justice or insure 
popular respect for the courts." Casey v. Casey, 2011 OK 46, ¶ 14, 270 P.3d 109. However we find no 
request that the judge in this case disqualify, and no particular facts of 
this case indicating the trial judge was obligated to recuse himself. Our 
impression of the written record is that of a judge attempting to act 
impartially between the adversarial demands of two aggressive and competent 
counsel and two frustrated parents. We find no evidence of the improper bias 
claimed by Mother.
IV. BEST INTERESTS
¶18 The district court found that that "both parents are fit custodians for 
the minor children"; that "the minor children are well cared for when in the 
custody of either parent"; and that "it is patently evident that each parent 
deeply cares for these children." Overall, the court found that physical custody 
by Father was in the children's best interests, stating, "The minor children 
have more stability in their lives; far greater familial, friends, 
extracurricular and school contacts with Dibble area with the Petitioner than 
that of the Respondent's home. There is a greater support group in their current 
location from both the paternal and maternal sides of the failed marriage." 
Contrary to Mother's brief, the court clearly did not base its decisions solely 
on these geographic factors, but made a careful assessment of the numerous 
allegations and arguments presented over five days of trial. We find the court's 
custody decision to be within the range of discretion granted to a trial judge 
in such matters. We therefore affirm its order.
CONCLUSION
¶19 We note especially that much of the case law on this issue involves 
motions to change custody arrangements based on a material change of 
circumstances post-decree. It is inherent in that scenario that joint custody 
has been tested in a situation free of the stresses and adversarial posture 
created by a custody contest and still found to be against a child's best 
interests. The record shows some hostility and a refusal to cooperate between 
the parents at the time of the divorce. It also shows, as the trial court found, 
that "it is patently evident that each parent deeply cares for these children." 
It does not show that they are incapable of overcoming this hostility in the 
longer term and acting in the best interests of their children. If the latter 
eventually proves to be the case, the established modification process is open 
to the parties. We therefore affirm the decision of the district court.

¶20 AFFIRMED.

RAPP, P.J., and BARNES, J., concur.

FOOTNOTES

[1] 
See, e.g., Herrera v. Herrera, 2013 OK CIV APP 25, ¶ 19, 298 P.3d 1209; In re Adoption of 
M.C.D., 2002 OK CIV APP 27, 
¶ 27, 42 P.3d 873.

[2] 
"However, the existence of [a procedure requiring that each parent agree to 
abide by the proposed plan] does not limit the trial court's power to consider 
the alternative of joint custody when such an arrangement clearly furthers the 
best interests of a child, even though one parent has not agreed in principle. 
Such a result would in effect negate the provisions of subsection B which 
recognizes the power of the trial court to do whatever is in the best interests 
of the child involved." Hornbeck, ¶ 10.

[3] The 
statute states, "If either or both parents have requested joint custody, said 
parents shall file with the court their plans for the exercise of joint care, 
custody, and control of their child." If both parties must desire joint 
custody, the statute would require a joint application.

[4] Mother 
filed contempt citations on August 31, 2011; September 16, 2011: December 21, 
2011; January 19, 2012; April 9, 2012; December 26, 2012, and February 6, 
2013.

[5] 
For example, see record at p. 231 where the court details attempts by 
Mother's new "significant other" to agitate Father by "blowing kisses" during 
trial. The court clearly found this behavior disturbing enough to note and 
condemn it in its written ruling on dissolution.





 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 1989 OK CIV APP 31, 787 P.2d 1288, 61 OBJ 680, Fast v. Fast
Discussed
 1989 OK CIV APP 44, 777 P.2d 403, 60 OBJ 2061, Dunham v. Dunham
Discussed
 1990 OK CIV APP 23, 791 P.2d 116, 61 OBJ 1363, Anderson v. Anderson
Discussed
 1991 OK CIV APP 101, 818 P.2d 1258, 62 OBJ 3498, Miles v. Young
Discussed at Length
 2002 OK CIV APP 27, 42 P.3d 873, 73 OBJ 936, IN RE ADOPTION OF M.C.D.
Discussed
 2008 OK CIV APP 94, 198 P.3d 406, KILPATRICK v. KILPATRICK
Discussed
 2013 OK CIV APP 25, 298 P.3d 1209, HERRERA v. HERRERA
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1960 OK 196, 355 P.2d 572, DAVIS v. DAVIS
Discussed
 1963 OK 14, 383 P.2d 211, YOUNG v. YOUNG
Discussed
 1965 OK 160, 408 P.2d 285, PERRY v. PERRY
Discussed
 1969 OK 174, 460 P.2d 946, HOOG v. HOOG
Cited
 2005 OK 6, 107 P.3d 589, WILLIAMSON v. WILLIAMSON
Discussed
 2007 OK 58, 163 P.3d 548, MILLER DOLLARHIDE, P.C. v. TAL
Discussed
 2007 OK 76, 171 P.3d 890, SPENCER v. OKLAHOMA GAS & ELECTRIC COMPANY
Discussed
 2010 OK 85, 247 P.3d 1162, FOSHEE v. FOSHEE
Discussed
 2011 OK 46, 270 P.3d 109, CASEY v. CASEY
Discussed
 1979 OK 161, 603 P.2d 1125, RICE v. RICE
Discussed
 1984 OK 90, 692 P.2d 1375, Gorham v. Gorham
Discussed at Length
 1985 OK 48, 702 P.2d 42, Hornbeck v. Hornbeck
Discussed at Length
 1986 OK 12, 725 P.2d 1234, 57 OBJ 877, Manhart v. Manhart
Discussed
Title 43. Marriage
 Cite
Name
Level

 43 O.S. 109, Best Interest of Child Considered in Awarding Custody or Appointing Guardian - Joint Custody - Plan - Arbitration
Discussed